UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:21-CV-60859-RKA

ABS HEALTHCARE SERVICES, LLC,
HEALTH OPTION ONE, LLC and
ONE STOP QUOTES, INC.

       Plaintiffs,

vs.

ANDREW SHADER, COREY SHADER,
NATIONAL HEALTH SOLUTIONS, INC.,
INFINIX MEDIA LLC, PRODIGY
HEALTH GROUP LLC, ADAM
BEEMAN, JOY STORMONT,
ALLIANCE MARKETING CORPORATION,
KRATOS INVESTMENTS LLC, HEALTH
TEAM ONE LLC, RICHARD RYSCIK,
SCOTT OFFUTT, BEEMAN'S FUTURE INC.,
CS MARKETING LLC, and C SHADER
INVESTMENTS LLC,

       Defendants.
_____/

**PLAINTIFFS' RESPONSE TO DEFENDANTS' JOINT CONSOLIDATED MOTION TO DISMISS, ABSTAIN, COMPEL ARBITRATION AND/OR STAY**

Carlos M. Sires, Esq.
Fla. Bar No. 319333
Sigrid S. McCawley, Esq.
Fla. Bar No. 129305
401 East Las Olas Blvd.,
Suite 1200
Fort Lauderdale,
Florida 33301
Telephone: (954) 356-0011

## **TABLE OF CONTENTS**

PLAINTIFFS CONSENT TO ARBITRATION; THUS, THIS ACTION MUST BE STAYED ........................................................................................................... 1

I.    Plaintiffs Consent To Arbitrate Their Claims. ................................................................. 1

II.   Based Upon the Parties' Agreement that the Claims Are to be Arbitrated, the Court Must Stay this Action. ................................................................................... 2

FACTUAL BACKGROUND ........................................................................................................ 5

PROCEDURAL HISTORY ........................................................................................................... 6

ARGUMENT .................................................................................................................................. 7

I.    Defendants' Jurisdiction and Abstention Arguments Do Not Change the Arbitrability of This Action. ........................................................................................................................ 7

    a.    Defendants' Claim-Splitting Argument Is a Red Herring, as There Is No Claim Splitting, Especially Since Plaintiffs Agreed to Arbitrate This Dispute. ....... 7

    b.    Defendants' *Rooker-Feldman* Argument Is Misplaced. ........................................... 8

    c.    Defendants' Abstention Arguments Are Meritless. ............................................... 10

II.   The Court Should Not Decide the Merits of Defendants' 12(b)(6) Arguments. .............. 14

CONCLUSION ............................................................................................................................. 14

CERTIFICATE OF SERVICE ..................................................................................................... 15

i

## **TABLE OF AUTHORITIES**

Page(s)

Cases

*Ambrosia Coal & Const. Co. v. Pages Morales*,
   368 F.3d 1320 (11th Cir. 2004) .......................................................................... 11, 12, 13, 14

*Anthony v. Sandbox*,
   No. 20-201130, 2021 WL 2000367 (S.D. Fla. Mar. 8, 2021)...................................................... 2

*Atlantic Coast Line Railroad v. Brotherhood of Locomotive Eng'rs*,
   398 U.S. 281 (1970)................................................................................................................. 7

*Axos Clearing, LLC v. Reynolds*,
   No. 19-civ-20979, 2019 WL 12346968 (S.D. Fla. Aug. 30, 2019) .......................................... 3

*Bosdorf v. Beach*,
   79 F. Supp. 2d 1337 (S.D. Fla. 1999) ................................................................................ 10, 13

*Branch v. Ottinger*,
   477 F. App'x 718 (11th Cir. 2012)............................................................................................ 4

*Clark Realty Builders, LLC v. Falls at Marina Bay,L.P.*,
   No. 05-60089, 2007 WL 9751796 (S.D. Fla. May18, 2007)..................................................... 3

*Colorado River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976)....................................................................................................... 7, 10, 12

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985)............................................................................................................. 4, 8

*District of Columbia Court of Appeals v. Feldman*,
   460 U.S. 462 (1983)................................................................................................................. 8

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
   544 U.S. 280 (2005).............................................................................................................. 8, 9

*Gomez v. BankUnited*,
   No. 10-21707, 2011 WL 114066 (S.D. Fla. Jan. 13, 2011) ...................................................... 3

*Guthrie v. United States*,
   618 F. App'x 612 (11th Cir. 2015) ........................................................................................... 2

*Harris v. Bd. of Tr. Univ. of Ala.*,
   846 F. Supp. 2d 1223 (N.D. Ala. 2012).................................................................................... 2

*Hernandez v. Acosta Tractors Inc.*,
  898 F.3d 1301 (11th Cir. 2018) ............................................................................................... 3

*Johnson & Johnson Vision Care, Inc. v. KennethCrosby N.Y., LLC*,
  No. 3:09CV874-J34MCR,2010 WL 1030121 (M.D. Fla. Mar. 17, 2010) ............................... 12

*Jones v. Georgia*,
  725 F.2d 622 (11th Cir. 1984) ................................................................................................. 2

*Kline v. Burke Const. Co.*,
  260 U.S. 226 (1922) ............................................................................................................... 10

*Lazarre v. JPMorgan Chase Ban, N.A.*,
  780 F. Supp. 2d 1320 (S.D. Fla. 2011) ................................................................................... 3

*McCants v. Alabama-W. Fla. Conf. of United Methodist Church, Inc.*,
  372 F. App'x 39 (11th Cir. 2010) ............................................................................................ 2

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
  460 U.S. 1 (1983) ................................................................................................ 8, 10, 11, 13

*Parker L. Firm v. Travelers Indem. Co.*,
  985 F.3d 579 (8th Cir. 2021) ................................................................................................. 10

*Preddy v. ADT, LLC*,
  No. 20-60971, 2020 WL 8572950 (S.D. Fla. Dec. 30, 2020) ............................................ 3, 5, 6

*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001) ................................................................................................... 2

*Rapid Sys., Inc. v. Fla. Rapid Rural Broadband All.,LLC*,
  No. 8:13-cv-1622, 2013 WL 12166315 (M.D. Fla. Oct. 24, 2013) .......................................... 3

*Rollins v. Waccamaw Regional Transportation Authority*,
   No. 4:17-CV-0597-RBH-TER, 2017 WL 5956669 (D.S.C. Nov. 7, 2017) ........................... 10

*Rooker v. Fidelity Trust Co.*,
  263 U.S. 413 (1923) ................................................................................................................ 8

*Sigmatech, Inc. v. United States*,
  365 F. Supp. 3d 1202 (N.D. Ala. 2019) ................................................................................... 2

*Smith v. HSBC Bank USA, Nat'l Ass'n*,
  679 F. App'x 876 (11th Cir. 2017) ........................................................................................... 9

*Tamar Diamonds, Inc. v. Splendid Diamonds, LLC*,
  No. 10-21470, 2010 WL 2350889 (S.D. Fla. June 11, 2010) ................................................. 12

*Target Media Partners v. Specialty Mktg. Corp.*,
   881 F.3d 1279 (11th Cir. 2018) .................................................................................................. 8

*Tellus Products, LLC v. Sustainable Fiber Techs., LLC*,
   No. 18-81143, 2019 WL 1116952 (S.D. Fla. Jan. 8, 2019) ....................................................... 2

*Tracfone Wireless, Inc. v. Simply Wireless, Inc.*,
   229 F. Supp. 3d 1284 (S.D. Fla. 2017) ................................................................................. 2, 3

*Valiente v. Holiday CVS, LLC*, No. 20-cv-2,
   No. 0382, 2020 WL 2404701 (S.D. Fla. May 12, 2020) .............................................................. 4

*Vanover v. NCO Fin. Services, Inc.*,
   857 F.3d 833 (11th Cir. 2017) ............................................................................................. 7, 8

*Weissbrod v. Broward County Board of Supervisors*,
   No. 21-CV-60170-RAR, No. 2021 WL 354199 (S.D. Fla. Feb. 1, 2021) ................................ 10

*Wright v. Greensky, Inc.*,
   No. 20-cv-62441, 2021 WL 24141770 (S.D. Fla. June 14, 2021) .............................................. 3

Statutes

9 U.S.C. § 3 ..................................................................................................................................... 4

18 U.S.C. § 1962(a) ...................................................................................................................... 14

18 U.S.C. § 1962(d) ...................................................................................................................... 14

18 U.S.C. § 1832 ........................................................................................................................... 13

18 U.S.C. § 1961(5) ...................................................................................................................... 14

18 U.S.C. § 1962(c) ...................................................................................................................... 13

18 U.S.C. §§ 1341, 1343 ............................................................................................................... 13

Fla. Stat. § 838.16 ......................................................................................................................... 13

Fla. Stat. § 682.03 ........................................................................................................................... 4

Other Authorities

Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4469.2 (2d ed.) ................................................. 9

Plaintiffs, ABS Healthcare Services, LLC, Health Option One, LLC (collectively, "ICD"), and One Stop Quotes, Inc. hereby file this response to Defendants' Joint Consolidated Motion to Dismiss, Abstain, Compel Arbitration and/or Stay ("Motion"). Dkt. 34.

## **PLAINTIFFS CONSENT TO ARBITRATION; THUS, THIS ACTION MUST BE STAYED**

### I.  Plaintiffs Consent to Arbitrate their Claims.

After reviewing Defendants' Motion, Plaintiffs agreed to consent to Defendants' demand for arbitration. Plaintiffs proposed a stipulation to the referral of their claims to arbitration and to the stay of the action pending the resolution of the arbitration. Defendants refused, asserting that they wanted the Court to rule on the other aspects of the Motion and, only if it denied them, would the Court compel Plaintiffs' claims to arbitration. Defendants' position is untenable. Once plaintiffs agree that their claims should be arbitrated, as Defendants argue must be the case, the Court lacks subject matter jurisdiction to entertain any of the other arguments in the Motion.

Defendants assert that the claims raised in this action "must" (their word) be arbitrated.[1] For example, in their Motion, they assert that:

- "Since ICD's claims against the Defendants are intertwined with ICD's claims against its former agents, ICD must arbitrate its claims." Dkt. 34 at 2;
- "Defendants Are Entitled to Compel Arbitration Under the Agent Agreements." *Id.* at 36; and
- "Here, compelling arbitration is appropriate on equitable estoppel grounds." *Id.* at 36.

---

[1] Defendants specifically listed all fifteen Defendants by name as moving for an order compelling arbitration on page one of their Motion.

1

## II.  Based Upon the Parties' Agreement that the Claims are to be Arbitrated, the Court Must Stay this Action.

"The Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." *Tellus Prods., LLC v. Sustainable Fiber Techs., LLC*, No. 18-81143, 2019 WL 1116952, at *2 (S.D. Fla. Jan. 8, 2019) (quoting *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1292 (S.D. Fla. 2017)).  For that reason, a motion to compel arbitration must be adjudicated at the threshold—before any other motion is addressed.  "When a district court has pending before it both a 12(b)(1) motion and a 12(b)(6) motion, the generally preferable approach, if the 12(b)(1) motion essentially challenges the existence of a federal cause of action, is for the court to [resolve the issue of] jurisdiction and then decide the 12(b)(6) motion." *Guthrie v. United States*, 618 F. App'x 612, 615 (11th Cir. 2015) (quoting *Jones v. Georgia*, 725 F.2d 622, 623 (11th Cir. 1984)).[2]

The rationale behind this is that a court must first assess jurisdictional questions before making any merits decision. *See McCants v. Alabama-W. Fla. Conf. of United Methodist Church, Inc.*, 372 F. App'x 39, 42 (11th Cir. 2010) ("the district court should have decided the Rule 12(b)(1) motion before deciding the Rule 12(b)(6) motion"); *Sigmatech, Inc. v. United States*, 365 F. Supp. 3d 1202, 1204 (N.D. Ala. 2019) ("When 'a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.'") (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)); *Anthony v. Sandbox*, No. 20-201130, 2021 WL 2000367, at *2 (S.D. Fla. Mar. 8, 2021) (same); *Rapid Sys., Inc. v. Fla. Rapid Rural Broadband All., LLC*, No. 8:13-cv-1622, 2013

---

[2]  "Generally, jurisdictional challenges are addressed under Rule 12(b)(1), whereas Rule 12(b)(6) provides for dismissal for failure of a party to state a claim for which relief can be granted." *Harris v. Bd. of Tr. Univ. of Ala.*, 846 F. Supp. 2d 1223, 1229 (N.D. Ala. 2012).

WL 12166315, at *2 (M.D. Fla. Oct. 24, 2013) ("When a defendant seeks dismissal under both Rule 12(b)(1) and 12(b)(6), a court first addresses the jurisdictional question.")

After determining that an issue should be arbitrated or the court's jurisdiction is otherwise lacking, courts in this Circuit decline to render a decision on the merits. *See*, *e.g., Preddy v. ADT, LLC*, No. 20-60971, 2020 WL 8572950, at *4 (S.D. Fla. Dec. 30, 2020) ("In light of the Court's decision that this case is subject to arbitration, the Court will not consider the substantive grounds for dismissal raised by ADT. The Court will stay the case pending arbitration.").[3] That is because it is axiomatic that when a claim is arbitrable, it is the arbitrator—and not the court—that should decide the merits of the dispute. *See Hernandez v. Acosta Tractors Inc.*, 898 F.3d 1301, 1305 (11th Cir. 2018) ("Section 3 of the FAA requires courts to stay a case that is covered by a binding arbitration clause so it may proceed in arbitration."); *Wright v. Greensky, Inc.*, No. 20-cv-62441, 2021 WL 2414170, at *20 (S.D. Fla. June 14, 2021) ("As discussed above, the Court finds that Plaintiff's claims in this case are subject to arbitration under the Agreement.  Therefore, a stay is appropriate."); *Clark Realty Builders, LLC v. Falls at Marina Bay, L.P.*, No. 05-60089, 2007 WL 9751796, at *3 (S.D. Fla. May 18, 2007) ("At the outset, the court notes that it is without jurisdiction to consider the validity and enforceability of the lien. The parties agreed to have the

---

[3]    *See also Axos Clearing, LLC v. Reynolds*, No. 19-civ-20979, 2019 WL 12346968, at *7 (S.D. Fla. Aug. 30, 2019) ("Having found that all of Plaintiff's claims are subject to arbitration under FINRA, and that Defendants did not waive the right to arbitrate, the Court need not reach Defendants' remaining grounds for dismissal."); *Tracfone Wireless, Inc*., 229 F. Supp. 3d at 1298 ("The Court should compel the parties to arbitration with respect to the causes of action asserted in Counts 5 through 7 for the reasons stated above.  Accordingly, the defendants' motion to dismiss Counts 5 through 7 for failure to state a claim should be DENIED as moot."); *Lazarre v. JPMorgan Chase Ban, N.A.*, 780 F. Supp. 2d 1320, 1328 (S.D. Fla. 2011) ("Because the Court lacks subject-matter jurisdiction over Lazarre's claims against Chase, the Court does not reach the merits of Chase's Rule 12(b)(6) motion."); *Gomez v. BankUnited*, No. 10-21707, 2011 WL 114066, at *2 (S.D. Fla. Jan. 13, 2011) ("[B]ecause this Court lacks subject matter jurisdiction over Gomez's claims, a 12(b)(6) analysis is unnecessary.").

arbitration panel decide any claim arising out of or related to the construction contract, including whether the mechanics' lien was valid and enforceable.") (internal quotation marks and alterations omitted); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

Here, Defendants seek an order "pursuant to 9 U.S.C. § 3 and §§ 682.03, Fla. Stat., compelling Plaintiffs . . . to arbitrate all claims and staying this action . . . ." Dkt. 34 at 1. 9 U.S.C. § 3 instructs that the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been [held] in accordance with the terms of the agreement . . . ." Moreover, Florida Statute § 682.03 provides that "If the refusing party does not appear or does not oppose the motion [to compel arbitration], the court shall order the parties to arbitrate."

Given the mixture of both 12(b)(1) and 12(b)(6) arguments, the Court should decide the 12(b)(1) argument in favor of arbitration first—and not address the 12(b)(6) arguments, which should properly be in the province of an arbitrator. *See* pp. 2-4, *supra*. Here, since both Parties have agreed that the claims raised in the Complaint should be heard in arbitration, the Court need only issue an order compelling arbitration. As is common practice in this Circuit, the Court should stay this action pending arbitration of Plaintiffs' claims. *See Branch v. Ottinger*, 477 F. App'x 718, 721 (11th Cir. 2012) ("A district court is required to stay a pending suit when it is satisfied that only arbitrable issues remain."); *Valiente v. Holiday CVS, LLC*, No. 20-cv-20382, 2020 WL 2404701, at *2 (S.D. Fla. May 12, 2020) ("Ultimately, however, the Eleventh Circuit has indicated that a stay, rather than dismissal, is preferred where a stay is requested.") (internal quotation marks, alterations, and citations omitted); *Preddy*, 2020 WL 8572950, at *4 (staying case pending

4

arbitration).

**FACTUAL BACKGROUND**

Given the agreement between the Parties that this case should be compelled to arbitration and stayed in the interim, Plaintiffs will only briefly discuss the underlying facts of this action. Plaintiffs are ABS Healthcare Services, LLC, Health Option One, LLC, and One Stop Quotes, Inc. ABS and Health Option One are collectively known as Insurance Care Direct, itself referred to as ICD. Compl. ¶¶ 10-12. ICD is a licensed general insurance agency. One Stop Quotes is a company owned by the co-founders of ICD, and is in the business of marketing Medicare insurance coverage. *Id.* ¶ 13. Since its inception in 2001, ICD has grown into one of the country's largest health and life insurance agencies. *Id.* ¶ 32. ICD offers individuals insurance plans and tailored memberships that include health benefits, products, and services. *Id.* ¶ 33. To market its plans, ICD enters into contracts with insurance agencies and agents. *Id.* ¶¶ 35-36.

Defendants are a mixture of individuals and entities owned and controlled by those same individuals. Corey and Andrew Shader are the masterminds and primary financiers of Defendants' ICD Misappropriation Enterprise. The Shaders control Defendants National Health Solutions, Inc., Infinix Media LLC, Alliance Marketing Corporation, CS Marketing LLC, and C Shader Investments LLC. *Id.* ¶¶ 14-15, 17-20. Defendant Scott Offutt is a confidant of the Shaders who works with them and their business interests. *Id.* ¶ 20. The Shaders and their businesses have worked closely with their longtime friend and business partner and convicted felon, Defendant Adam Beeman. *Id.* ¶ 4. With Beeman's assistance, the Shaders created and funded Defendant Prodigy Health Group LLC, a vehicle to illicitly compete with ICD and steal its business. *Id.* ¶ 68.

As a convicted felon, Beeman has resorted to using fronts to conceal his insurance-related activity from unwanted scrutiny. *Id.* ¶ 72. To that end, he enlisted the help of his childhood friend,

Defendant Richard Ryscik, to act as a front for Defendants Kratos Investments LLC and Health Team One, LLC—two companies operating in the insurance industry. *Id.* ¶ 75. Ryscik is merely a façade used to hide Beeman's involvement both from ICD and from regulators; Ryscik does not actually have any industry experience, nor does he actually operate the businesses. *Id.* ¶¶ 75-76, 81. Likewise, Beeman brought in his mother, Defendant Joy Stormont, to conceal his involvement. *Id.* ¶¶ 94, 101. For example, Stormont has been used to conceal the origin of communications stemming from Beeman. *Id.* ¶ 102. And, like the schemes' leaders, the Shaders, Beeman too maintains a shell company to represent his business interests and handle the flow of money used to fund the Enterprise: Defendant Beeman's Future Inc.

In sum, Defendants' scheme involved the misappropriation of ICD's confidential information, trade secrets, customers, and business through a pattern of racketeering activity. *Id.* ¶¶ 44-45. At the Shaders' direction, Defendants illicitly competed with ICD by creating sham corporate entities that masked their true ownership. *Id.* ¶¶ 57-58. The members of Defendants' scheme took great pains to hide their involvement, going as far as to use pseudonyms to mask their identities. *Id.* The end result was for Defendants to rid themselves of their obligations to ICD.

## **PROCEDURAL HISTORY**

As summarized in Defendants' Motion, certain parties to this case are currently engaged in arbitrations before the American Arbitration Association. On May 4, 2021, the Broward County Circuit Court ordered the parties to that action, which included nine of the Defendants here, to arbitrate. And, on May 4, 2021, ICD filed its own demand for arbitration against Kratos, Health Team One, and Ryscik, among others, in response to an order compelling arbitration in that action. Most recently, on June 17, 2021, three Defendants in this action, Corey Shader, Andrew Shader, and NHS, filed a claim before the AAA against ICD.

# ARGUMENT

I. **Defendants' Jurisdiction and Abstention Arguments Do Not Change the Arbitrability of this Action.**

Defendants' jurisdiction and abstention arguments do not conflict with the common sense, legally-mandated reasoning as to why this action should be stayed pending arbitration. In fact, Defendants' arguments concerning claim splitting, jurisdiction, and abstention support Plaintiffs' argument that this case should be stayed pending arbitration of the merits.

    a. **Defendants' Claim-Splitting Argument is a Red Herring, as There is No Claim Splitting, Especially Since Plaintiffs Agreed to Arbitrate This Dispute.**

Defendants argue that the Court should dismiss the Complaint based on improper claim-splitting. Dkt. 34 at 9. However, the claim-splitting doctrine would only apply if this was a case of concurrent jurisdiction between federal district courts. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18 (1976). Where claims are "split" between state and federal courts, for example, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River*, 424 U.S. at 817; *see also Atl. Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970) ("[T]he state and federal courts had concurrent jurisdiction in this case, and neither court was free to prevent either party from simultaneously pursuing claims in both courts."). This difference between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction "stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817–18.

Moreover, "the claim-splitting rule exists to allow district courts to manage their docket" and conserve "scarce judicial resources." *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017). These concerns are simply not implicated in a case where claims are allegedly being split between litigation and arbitration. In fact, the Supreme Court has held that the FAA

actually "requires piecemeal resolution when necessary. . . ." *Dean Witter Reynolds*, 470 U.S. at 221; *see also Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20 (1983) (affirming an order requiring enforcement of an arbitration agreement, even though the arbitration would result in bifurcated proceedings).

Despite having a right to seek redress in federal court, Plaintiffs have nevertheless agreed to "promote judicial economy" and arbitrate these claims alongside other arbitrations. *See Vanover*, 857 F.3d at 841. As a result, Defendant's underlying concerns regarding claim-splitting can and should be addressed by compelling arbitration of this action.

      **b.**      **Defendants'** ***Rooker-Feldman*** **Argument is Misplaced.**

"The *Rooker–Feldman* doctrine," the Supreme Court has explained, "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). That is, a federal plaintiff must be claiming that a state-court judgment has caused an injury and asking the federal court to directly review and reject that judgment. *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1285–86 (11th Cir. 2018) ("[W]e now apply *Rooker–Feldman* to bar only those claims asserted by parties who have lost in state court and then ask the district court, ultimately, to review and reject a state court's judgments."); *accord Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414 (1923) (rejecting plaintiff's request to district court to review a state judgment and declare it "null and void"); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) (rejecting plaintiff's pursuit of injunctive relief against the court that had rendered the adverse judgment). Outside of "the narrow ground" it occupies, "*Rooker–Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to

stay or dismiss proceedings in deference to state-court actions," and those doctrines govern. *Exxon Mobil*, 544 U.S. at 284.

Defendants point to nowhere in the Complaint where Plaintiffs claim an injury from state court rules or seek review of the state court judgments. Indeed, there are no state court judgments to review—only orders staying proceedings and compelling arbitration. That fact alone bars application of the *Rooker-Feldman* doctrine. *See* Wright & Miller, 18B Fed. Prac. & Proc. Juris. § 4469.2 (2d ed.) ("If there is no state-court judgment, whatever injury is claimed cannot have been caused by a judgment and *Rooker-Feldman* does not apply.") (collecting cases). Even if *Rooker-Feldman* were applicable to interlocutory orders as Defendants contend—and Eleventh Circuit precedent makes clear that *Rooker-Feldman* is appropriate only when the relief would implicate a "final state court judgment," *Smith v. HSBC Bank USA, Nat'l Ass'n*, 679 F. App'x 876, 878 (11th Cir. 2017)—Defendants have failed to demonstrate how Plaintiffs are seeking federal court review of any order.

Here, Plaintiffs have asserted distinct claims under federal law whose disposition would have no effect on, let alone seek review of, state court judgments that did not reach the merits. All of Defendants' principal cases illustrate that that is the core of *Rooker-Feldman*. In *Weissbrod v. Broward Cnty. Bd. of Supervisors*, the plaintiff asked the "Court to overturn the guardianship decision of a state court," a decision which had been "finally adjudicated by the Florida courts." No. 21-CV-60170-RAR, 2021 WL 354199, at *1 (S.D. Fla. Feb. 1, 2021).[4] And in *Parker L. Firm v. Travelers Indem. Co.*, the federal plaintiffs were not merely asking the federal court to proceed

---

[4] *Bosdorf v. Beach*, in which a district court judge acknowledged that the case did "not fall within the typical *Rooker–Feldman* framework in that [the plaintiffs] have not directly challenged the state court's ruling or asked this court to direct the state court to do something," and that the "spirit" of the *Rooker-Feldman* doctrine warranted its application, lacks any persuasive force after the Supreme Court's pronouncement in *Exxon Mobil*. 79 F. Supp. 2d 1337, 1341 (S.D. Fla. 1999).

9

with different claims in spite of an order to arbitrate other claims; they were seeking direct review and restrictions on the state court's arbitration judgment: plaintiffs "sought a declaratory judgment that [defendants'] claims in New York have no merit" and "to 'protect and guard against impermissible efforts by [defendants] to compel arbitration,' they moved for an order enjoining [the defendants] from pursuing arbitration of these claims in New York." 985 F.3d 579, 583-84 (8th Cir. 2021). Similarly, in *Rollins v. Waccamaw Reg'l Transp. Auth.*, the plaintiff had been explicitly compelled to arbitration by the state court on the very federal law claim he sought to have the federal court take up, thus asking for direct review of the state court judgment. No. 4:17-CV-0597-RBH-TER, 2017 WL 5956669, at *3-4 (D.S.C. Nov. 7, 2017).

In short, because Plaintiffs agree with Defendants that the claims raised here can be arbitrated, the *Rooker-Feldman* doctrine is inapplicable.

### c.  **Defendants' Abstention Arguments Are Meritless.**

The "pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction, and the federal courts have a virtually unflagging obligation to exercise the jurisdiction given them." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 15 (quoting *Colorado River*, 424 U.S. at 817 (internal quotations and modifications omitted)); *see also Kline v. Burke Const. Co.*, 260 U.S. 226, 232 (1922) ("Where a suit is strictly in personam, in which nothing more than a personal judgment is sought, there is no objection to a subsequent action in another jurisdiction, either before or after judgment, although the same issues are to be tried and determined"). Accordingly, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Moses H. Cone*, 460 U.S. at 14. The Supreme Court has repeatedly emphasized that *Colorado River* abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it" that can only be justified by "exceptional circumstances where the order to the parties to repair to the State court would clearly

10

serve an important countervailing interest." *Id.*; *see also Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320, 1332 (11th Cir. 2004) (noting a "a heavy bias in favor of exercising jurisdiction"). The Supreme Court has been explicit that the district court's task "is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the surrender of that jurisdiction." *Moses H. Cone*, 460 U.S. at 25–26. This case presents no such exceptional circumstances.

Plaintiffs are seeking in personam relief against Defendants under federal causes of action not raised in state court that are legally and conceptually distinct. Compelling arbitration and staying the proceeding pending arbitration—as both Defendants and Plaintiffs request—obviates the need for even conducting the *Colorado River* analysis. The Court can retain jurisdiction to compel arbitration. That is what the Supreme Court permitted in *Moses H. Cone*, 460 U.S. at 29, and it is not inconsistent with the case law cited by Defendants. In *Johnson & Johnson Vision Care, Inc. v. Kenneth Crosby N.Y., LLC*, the district court stayed the case because the state court had ordered FAA arbitration on exactly the same claims, leaving the federal court to note "the state court beat this Court to the punch in answering the question of arbitrability." No. 3:09CV874-J34MCR, 2010 WL 1030121, at *1, *7 (M.D. Fla. Mar. 17, 2010). *Tamar Diamonds, Inc. v. Splendid Diamonds, LLC*, is not even remotely relevant because the federal plaintiffs were seeking to enjoin state court proceedings—relief independently barred under the Anti-Injunction Act—to prevent the enforcement of an existing arbitral award, not compel arbitration. No. 10-21470, 2010 WL 2350889, at *3 (S.D. Fla. June 11, 2010)

Even were that not the case, the *Colorado River* factors are not satisfied and do not warrant abstention. The state proceedings are manifestly not *in rem* and the state forum has no premium

11

on convenience, making the first and second factors—as Defendants concede, Dkt 34. at 15—neutral and unsupporting of abstention.  Defendants' invocation of the third factor, avoidance of piecemeal litigation, is likewise uncompelling.  The Eleventh Circuit has explicitly cautioned that "as it is properly understood, *Colorado River*'s factor concerning the avoidance of piecemeal litigation does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." *Ambrosia Coal*, 368 F.3d at 1333.  The threshold for concerns about piecemeal litigation, it suggested in *Ambrosia Coal*, was illustrated by the facts of the *Colorado River* case itself, and concluded that a complex contractual dispute was fundamentally different in kind from the piecemeal litigation concerns in *Colorado River* because it "neither turns on a federal statute designed with the intent of avoiding piecemeal litigation nor involves claims against 1,000 parties."  *Id*.  In other words, the mere fact that courts or arbitral tribunals may issue decisions with preclusive effect is not enough to warrant abstention.  Moreover, compelling this case to arbitration implicates no risk of piecemeal rulings by this Court.

Defendants also misrepresent *Bosdorf v. Beach*, the single case they rely on to support their argument.  Defendants claim that in "*Bosdorf*, the court abstained from a RICO complaint, in part, because the plaintiffs filed the action in response to losing in state court."  Dkt. 34 at 16.  That is wrong.   Not only does *Bosdorf* not mention any RICO complaint, *see* 79 F. Supp. 2d at 1337, examination of the complaint reveals that it was a single-count negligence claim.  *Bosdorf v. Beach*, No. 19CV010095, Dkt. 1 (S.D. Fla. April 19, 1999).  Moreover, the *Bosdorf* plaintiffs were refiling the exact same claim against the exact same defendants who had just been dismissed from the parallel state actions for lack of personal jurisdiction.  Those facts could not be more disparate from the ones here.  Bringing previously un-asserted federal claims in federal court when they

could be founded on facts is neither vexatious nor reactive.

As to the fourth factor, Defendants gloss over the fact that not a single state court or arbitral tribunal has issued a ruling on the merits. The Eleventh Circuit has noted that "this factor 'should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.'" *Ambrosia Coal*, 368 F.3d at 1333 (quoting *Moses H. Cone*, 460 U.S. at 21). Good-faith disputes over the arbitrability of the state actions aside, there simply has not been substantial progress in any of the state or arbitral proceedings that would counsel against this court exercising jurisdiction to compel arbitration.

On the fifth factor, the predominance of federal law claims favors federal jurisdiction. Although Defendants identify isolated instances where state law also underpins Plaintiffs' claims, a canvass of the complaint reveals federal law to predominate both with respect to causes of action and predicates. *See Compl*. ¶¶ 159 (18 U.S.C. § 1962(c) – Civil RICO); 169 (18 U.S.C. §§ 1341, 1343 – mail and wire fraud), 175 (18 U.S.C. § 1832 – theft of trade secrets), 186 (Fla. Stat. § 838.16 – state law commercial bribery), 189 (18 U.S.C. § 1961(5) – racketeering), 198–209 (18 U.S.C. 1962(a) – Civil RICO), 210–216 (18 U.S.C. 1962(d) – Civil RICO). And to the extent that state law issues do arise, federal courts can, and routinely do, apply relevant state law. Further, the sixth factor is neutral because neither party contends that this Court or the state courts are inadequate to protect a party's rights. *See Ambrosia Coal*, 368 F.3d at 1334 ("This factor will only weigh in favor or against abstention when one of the fora is inadequate to protect a party's rights."). Defendants have not demonstrated that any of the *Colorado River* factors present the "extraordinary circumstances" necessary to force this Court to relinquish jurisdiction. And given that both Plaintiffs and Defendants consent to this Court staying proceedings and compelling this case to arbitration—similar to what a stay under *Colorado River* would affect—there is no reason

to reach the abstention issue.

## II. The Court Should Not Decide the Merits of Defendants' 12(b)(6) Arguments.

Defendants have raised certain challenges pursuant to 12(b)(6) alleging the failure to properly state a RICO claim. As explained above, the case law is clear that when the claims are subject to arbitration, as the Defendants have stated here, the Court should not address the merits arguments raised in a Motion to Dismiss and should instead compel the parties to arbitration for the arbitrator to decide the merits issues. Accordingly, Plaintiffs have not addressed the merits arguments at this time but to the extent the Court finds any issue with compelling the claims to arbitration, and intends to address the merits of the Motion to Dismiss, Plaintiffs respectfully request ten days from the date of that decision to submit argument relating to the merits of Defendants' allegation that Plaintiffs have failed to sufficiently plead the elements of a RICO claim.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask that this Court direct all parties to arbitration and stay this action.

Dated:  July 8, 2021                                             Respectfully submitted,

                                              **BOIES SCHILLER FLEXNER LLP**

By:     */s/ Carlos M. Sires*
        Carlos M. Sires, Esq.
        Fla. Bar No. 319333
        Sigrid S. McCawley, Esq.
        Fla. Bar No. 129305
        401 East Las Olas Blvd., Suite 1200
        Fort Lauderdale, Florida 33301
        Telephone: (954) 356-0011
        csires@bsfllp.com
        smccawley@bsfllp.com

*Counsel for Plaintiffs ABS Healthcare Services, LLC, Health Option One, LLC, and One Stop Quotes, Inc.*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 8, 2021, a true and correct copy of the foregoing document was served via the CM/ECF system on all counsel of record.

By:     */s/ Carlos M. Sires*
        Carlos M. Sires, Esq.

15