# Exhibit 1

**ABS HEALTHCARE SERVICES, LLC, AND HEALTH OPTION ONE, LLC (collectively, "ICD")**
**RELATED CIVIL CASES AND ARBITRATIONS FILED SINCE APRIL 2020 (*REVISED*)**
(Parties in common with No. 21-CV-60859-RKA are listed in ***Bold Italics***)

## RELATED CIVIL CASE NO. 1

| Court / Case No. / Judge / Filing Date | Parties | Claims Asserted | Allegations | Status |
|---|---|---|---|---|
| Broward County Circuit Court<br><br>No. CACE-20-006195<br><br>Chief Judge Jack Tuter<br><br>Filed: April 9, 2020<br><br>**Complaint and docket attached as EXHIBITS [A-1 and A-2]** | ***ABS Healthcare Services, LLC and Health Option One, LLC***<br>*v.*<br>***Andrew Shader, Corey Shader, National Health Solutions, Inc. ("NHS"),*** *Infinix Media LLC ("Infinix"),* ***Prodigy Health Group, LLC ("Prodigy"), Adam Beeman, Joy Stormont, Alliance Marketing Corporation ("AMC")*** | **COUNT I**<br>Breach of the January 19, 2019 Agreement for Payment of Fees, Compensation and Residuals (as amended January 29, 2019)<br><br>**COUNT II**<br>Tortious Interference with Agent Contracts<br><br>**COUNT III**<br>Tortious Interference with Business Relationships (prospective customers)<br><br>**COUNT IV**<br>Misappropriation of Trade Secrets, Fla. Stat. Chap. 688, Florida Uniform Trade Secrets Act ("FUTSA")<br><br>**COUNT V**<br>Violation of Non-Compete, Fla. Stat. Chap. 542<br><br>**COUNT VI**<br>Declaratory Judgment | **Paragraph 27:**<br>"These Defendants used Prodigy and Infinix *surreptitiously and in violation of the Agreement to illicitly compete with ICD and steal ICD's proprietary trade secrets, business model, agents and customer base*. Upon information and belief, Defendants have funded other companies for a similar purpose and have *provided financial incentives to agents to convince them to violate their contracts with Plaintiffs*." | Prodigy/Beeman/Stormont motion to compel arbitration (and Andrew Shader/Corey Shader/NHS/AMC joinder of motion) **GRANTED** on May 4, 2021.<br><br>**Order Compelling Arbitration attached as EXHIBIT [A-3]**<br><br>*See Related Arbitration Case No. 1A.* |

## RELATED ARBITRATION CASE NO. 1A

| Court / Case No. / Judge / Filing Date | Parties | Claims Asserted | Allegations | Status |
|---|---|---|---|---|
| American Arbitration Association ("AAA") Commercial Arbitration<br><br>No. TBD<br><br>Arbitrator:  TBD<br><br>Filed: July 11, 2021<br><br>**Demand for Arbitration attached as EXHIBIT [1A]** | ***ABS Healthcare Services, LLC and Health Option One, LLC***<br>*v.*<br>***Andrew Shader, Corey Shader, National Health Solutions, Inc. ("NHS"),*** *Infinix Media LLC ("Infinix"),* ***Prodigy Health Group, LLC ("Prodigy"), Adam Beeman, Joy Stormont, Alliance Marketing Corporation ("AMC")*** | **COUNT I**<br>Breach of Pre-2019 Agreements<br><br>**COUNT II**<br>Breach of the January 19, 2019 Agreement for Payment of Fees, Compensation and Residuals (as amended January 29, 2019)<br><br>**COUNT III**<br>Tortious Interference with Agent Contracts<br><br>**COUNT IV**<br>Tortious Interference with Business Relationships (existing and prospective customers)<br><br>**COUNT V**<br>Misappropriation of Trade Secrets<br><br>**COUNT VI**<br>Conspiracy to Misappropriate Trade Secrets<br><br>**COUNT VII**<br>Violation of Non-Compete, Fla. Stat. Chapter 542<br><br>**COUNT VIII**<br>Declaratory Judgment<br><br>**COUNT VIIII [sic[**<br>Conspiracy to Breach the ICD Exclusive Agent Agreements<br><br>**COUNT X**<br>Injunctive Relief<br><br>**COUNT XI**<br>Fraudulent Inducement | **Paragraph 56:**<br>"***Working in concert, Respondents have engaged in, and continue to engage in, a scheme to steal ICD's business. To carry out the scheme, Respondents have conspired, and continue to conspire, to steal ICD's business by, among other things, setting up sham, competing entities, interfering with the ICD Exclusive Agent Agreements, illicitly soliciting ICD's customers and prospective customers, improperly interfering with ICD's business relationships*** with call centers, insurance carriers, lead generators, and administrators ***and misappropriating ICD's confidential information and trade secrets.***" | Pending |

## RELATED CIVIL CASE NO. 2

| Court / Case No. / Judge / Filing Date | Parties | Claims Asserted | Allegations | Status |
|---|---|---|---|---|
| Miami-Dade County Circuit Court<br><br>No. 2020-008460 CA 44<br><br>Hon. William Thomas<br><br>Filed: April 15, 2020<br><br>**Complaint and docket attached as EXHIBITS [B-1 and B-2]** | ***ABS Healthcare Services, LLC and Health Option One, LLC***<br>*v.*<br>***Kratos Investments LLC, Health Team One LLC***, Complete Vital Care LLC, Vital Care One LLC, Health Essential Care LLC, **and Richard Ryscik** | **COUNT I**<br>Conspiracy to Breach the ICD Exclusive Agent Agreements<br><br>**COUNT II**<br>Tortious Interference With Agent Agreements<br><br>**COUNT III**<br>Tortious Interference with Business Relationships (prospective customers)<br><br>**COUNT IV**<br>Misappropriation of Trade Secrets<br><br>**COUNT V**<br>Conspiracy to Misappropriate Trade Secrets (with the Agents) | **Paragraph 23:**<br>"***Defendants have conspired*** with others, including Andrew Shader, Corey Shader, National Health Solutions, Inc. ("NHS"), and exclusive licensed agents of ICD (identified below), ***to steal ICD's business by, among other things, setting up sham, competing entities, interfering with the ICD Exclusive Agent Agreements, illicitly soliciting ICD's customers and prospective customers, and misappropriating ICD's confidential information and trade secrets.***"<br><br>**Paragraph 26:**<br>"In order to steal ICD's business, ***Kratos*** has appointed numerous Agents who have ICD Exclusive Agent Agreements and, ***in conspiracy with Andrew Shader, Corey Shader, and NHS, knowingly solicited and induced such Agents to violate and breach their contractual and fiduciary obligations to ICD***. Among those agents are ***Barbara Baca, James Hardill, Bradley Tierney, Francis Desola, Alex Geissler, Adam Bassell, Harry Slater, and Ryan Kelty***." | On March 17, 2021, the Third District Court of Appeal **REMANDED WITH INSTRUCTIONS** to grant motion to compel arbitration as to **ALL** claims.<br><br>On April 25, 2021, the trial court **GRANTED** Defendants' Motion to Compel Arbitration.<br><br>*See Related Arbitration Case No. 3.*<br><br>**Third District Court of Appeal Opinion attached as EXHIBIT B-3; Order Compelling Arbitration attached as EXHIBIT B-4.** |

## RELATED ARBITRATION CASE NO. 3

| Court / Case No. / Judge / Filing Date | Parties | Claims Asserted | Allegations | Status |
|---|---|---|---|---|
| American Arbitration Association ("AAA") Commercial Arbitration<br><br>No. 01-21-0003-7170<br><br>Arbitrator:  TBD<br><br>Filed: May 4, 2021<br><br>**Demand for Arbitration attached as EXHIBIT [C]** | ***ABS Healthcare Services, LLC and Health Option One, LLC***<br>v.<br>***Kratos Investments LLC, Health Team One LLC***, Complete Vital Care LLC, Vital Care One LLC, Health Essential Care LLC, ***and Richard Ryscik*** | **COUNT I**<br>Conspiracy to Breach the ICD Exclusive Agent Agreements<br><br>**COUNT II**<br>Tortious Interference With Agent Agreements<br><br>**COUNT III**<br>Tortious Interference with Business Relationships (prospective customers)<br><br>**COUNT IV**<br>Misappropriation of Trade Secrets<br><br>**COUNT V**<br>Conspiracy to Misappropriate Trade Secrets (with the Agents)<br><br>**COUNT VI**<br>Injunctive Relief | **Paragraph 20:**<br>"Respondents have engaged in, and continue to engage in, *a scheme to steal ICD's business*. To carry out the scheme, the ***Respondents have conspired***, and continue to conspire, *with others, including Andrew Shader, Corey Shader, National Health Solutions, Inc. ("NHS"), and exclusive licensed agents of ICD (identified below), to steal ICD's business by, among other things, setting up sham, competing entities, interfering with the ICD Exclusive Agent Agreements, illicitly soliciting ICD's customers and prospective customers, improperly interfering with ICD's business relationships … and misappropriating ICD's confidential information and trade secrets*.<br><br>**Paragraph 23:**<br>In order to steal ICD's business, ***Kratos*** has appointed numerous Agents who have ICD Exclusive Agent Agreements and, *in conspiracy with Andrew Shader, Corey Shader, and NHS, knowingly solicited and induced such Agents to violate and breach their contractual and fiduciary obligations to ICD. Among those agents are Barbara Baca, James Hardill, Bradley Tierney, Francis Desola, Alex Geissler, Adam Bassell, Harry Slater, and Ryan Kelty.* | Pending |

## RELATED CIVIL CASE NO. 4

| Court / Case No. / Judge / Filing Date | Parties | Claims Asserted | Allegations | Status |
|---|---|---|---|---|
| Broward County Circuit Court<br><br>No. CACE-20-006862<br><br>Hon. Sandra Perlman<br><br>Filed: April 22, 2020<br><br>**Complaint and docket attached as EXHIBITS [D-1 and D-2]** | ***ABS Healthcare Services, LLC and Health Option One, LLC***<br>*v.*<br><br>*Bradley Tierney*<br><br>(ALLEGED FORMER ICD AGENT) | **COUNT I**<br>Breach of Agent Agreement<br>**COUNT II**<br>Permanent Injunctive Relief (based on Agent Agreement)<br>**COUNT III**<br>Permanent Injunctive Relief (under FUTSA)<br>**COUNT IV**<br>Misappropriation of Trade Secrets – Disgorgement<br>**COUNT V**<br>Tortious Interference with Other Agents' Agent Agreements<br>**COUNT VI**<br>Unjust Enrichment – Constructive Trust (Trade Secrets) | **Paragraph 30:**<br>"***Working in concert with others, including Corey Shader, Andrew Shader, Adam Beeman, Joy Stormont, Infinix Media LLC, Prodigy Health Group LLC, National Health Solutions, Inc., Alliance Marketing Corporation, Kratos Investments LLC, Health Team One LLC,*** Complete Vital Care LLC, Vital Care One LLC, Health Essential Care LLC, ***and Richard Ryscik and the following agents: Alex Geissler, Harry Slater, Adam Bassell, Francis Desola, Barbara Baca, Ryan Kelty, and James Hardill, Defendant Tierney has engaged in a scheme to steal ICD's business***. | Defendant's Motion to Stay or Abate Proceedings Until Resolution of Prior Pending California Action **GRANTED** on June 10, 2020.<br><br>*See Related Civil Case No. 5, below.*<br><br>**Order Staying Action attached as EXHIBIT D-3.** |

## RELATED CIVIL CASE NO. 5

| Court / Case No. / Judge / Filing Date | Parties | Claims Asserted | Status |
|---|---|---|---|
| Superior Court of California, County of Los Angeles<br><br>No. 20SMCV00617<br><br>Hon. Craig D. Karlan<br><br>Filed: April 23, 2020<br><br>**Complaint and docket attached as EXHIBITS [E-1 and E-2]** | *Legacy Insurance Solutions LLC, and Bradley Tierney*<br>*v.*<br><br>***ABS Healthcare Services, LLC, Health Option One, LLC***, *and DOES 1-20* | Action for declaratory judgment and injunction by Bradley Tierney, an alleged former ICD agent, that the ICD Agent Agreement is an illegal and unenforceable restraint of trade. | On July 20, 2020, Judge Karlan entered a **TEMPORARY RESTRAINING ORDER** precluding **ABS Healthcare Services, LLC and Health Option One, LLC**, from enforcing any of the restrictive provisions or covenants in the Agent Agreement.<br><br>**TRO attached as EXHIBIT E-3.** |

## RELATED CIVIL CASE NO. 6

| Court / Case No. / Judge / Filing Date | Parties | Claims Asserted | Allegations | Status |
|---|---|---|---|---|
| Broward County Circuit Court<br><br>No. CACE-20-006863<br><br>Hon. Nicholas Lopane<br><br>Filed: April 22, 2020<br><br>**Complaint and docket attached as EXHIBITS [F-1 and F-2]** | ***ABS Healthcare Services, LLC and Health Option One, LLC***<br>*v.*<br>*James Hardill*<br><br>(FORMER ICD AGENT) | **COUNT I**<br>Breach of Agent Agreement<br>**COUNT II**<br>Permanent Injunctive Relief (based on Agent Agreement)<br>**COUNT III**<br>Permanent Injunctive Relief (under FUTSA)<br>**COUNT IV**<br>Misappropriation of Trade Secrets – Disgorgement<br>**COUNT V**<br>Tortious Interference with Other Agents' Agent Agreements<br>**COUNT VI**<br>Unjust Enrichment – Constructive Trust (Trade Secrets) | **Paragraph 30:**<br>"***Working in concert with others, including Corey Shader, Andrew Shader, Adam Beeman, Joy Stormont, Infinix Media LLC, Prodigy Health Group LLC, National Health Solutions, Inc., Alliance Marketing Corporation, Kratos Investments LLC, Health Team One LLC***, Complete Vital Care LLC, Vital Care One LLC, Health Essential Care LLC, ***and Richard Ryscik and the following agents: Alex Geissler, Bradley Tierney, Adam Bassell, Francis Desola, Barbara Baca, Harry Slater, and Ryan Kelty, Defendant Hardill has engaged in a scheme to steal ICD's business***. | On July 6, 2020, plaintiffs filed a Notice of Voluntary Dismissal Without Prejudice of Counts I and V.<br><br>On July 28, 2020, Motion to Compel Arbitration **GRANTED**.<br><br>On March 11, 2021, Fourth District Court of Appeal **AFFIRMED**.<br><br>On October 2, 2020, James Hardill filed Arbitration, AAA Case No. 01-20-0015-1104.<br><br>*See Related Arbitration Case No. 7 below.*<br><br>**Order Compelling Arbitration attached as EXHIBIT F-3.** |

## RELATED ARBITRATION CASE NO. 7

| Court / Case No. / Judge / Filing Date | Parties | Arbitration Claims Asserted | Status |
|---|---|---|---|
| AAA Commercial Arbitration<br><br>No. 01-20-0015-1104<br>Arbitrator: John Arrastia<br>Filed: October 2, 2020<br><br>**Complaint and docket attached as EXHIBIT [G]** | *James Hardill*<br>*v.*<br>***ABS Healthcare Services, LLC and Health Option One, LLC*** | Arbitration action by James Hardill, a former ICD agent, for declaratory relief that the ICD Agent Agreement is an unlawful and unenforceable restraint of trade and that Mr. Hardill did not receive or misappropriate ICD trade secret information. | Preliminary Hearing held on April 29, 2021. |

## RELATED CIVIL CASE NO. 8

| Court / Case No. / Judge / Filing Date | Parties | Claims Asserted | Allegations | Status |
|---|---|---|---|---|
| Broward County Circuit Court<br><br>No. CACE-20-006870<br><br>Hon. Nicholas Lopane<br><br>Filed: April 22, 2020<br><br>**Complaint and docket attached as EXHIBITS [H-1 and H-2]** | ***ABS Healthcare Services, LLC and Health Option One, LLC***<br>*v.*<br>*Francis DeSola*<br><br>(FORMER ICD AGENT) | **COUNT I**<br>Breach of Agent Agreement<br>**COUNT II**<br>Permanent Injunctive Relief (based on Agent Agreement)<br>**COUNT III**<br>Permanent Injunctive Relief (under FUTSA)<br>**COUNT IV**<br>Misappropriation of Trade Secrets – Disgorgement<br>**COUNT V**<br>Tortious Interference with Other Agents' Agent Agreements<br>**COUNT VI**<br>Unjust Enrichment – Constructive Trust (Trade Secrets) | Paragraph 30:<br>"***Working in concert with others, including Corey Shader, Andrew Shader, Adam Beeman, Joy Stormont, Infinix Media LLC, Prodigy Health Group LLC, National Health Solutions, Inc., Alliance Marketing Corporation, Kratos Investments LLC, Health Team One LLC,*** Complete Vital Care LLC, Vital Care One LLC, Health Essential Care LLC, *and Richard Ryscik and the following agents: James Hardill, Bradley Tierney, Adam Bassell, Alex Geissler, Barbara Baca, Harry Slater, and Ryan Kelty, Defendant Desola has engaged in a scheme to steal ICD's business.*" | On July 6, 2020, plaintiffs filed a Notice of Voluntary Dismissal Without Prejudice of Counts I and V.<br><br>On July 28, 2020, Motion to Compel Arbitration **GRANTED**.<br><br>On March 11, 2021, Fourth District Court of Appeal **AFFIRMED**.<br><br>On October 22, 2020, Francis DeSola filed Arbitration, AAA Case No. 01-20-0015-3776.<br><br>*See Related Arbitration Case No. 9 below.*<br><br>**Order Compelling Arbitration attached as EXHIBIT H-3.** |

## RELATED ARBITRATION CASE NO. 9

| Court / Case No. / Filing Date | Parties | Arbitration Claims Asserted | Status |
|---|---|---|---|
| AAA Commercial Arbitration<br><br>No. 01-20-0015-3776<br><br>Arbitrator:  John Arrastia<br><br>Filed: October 22, 2020<br><br>**Demand for Arbitration attached as EXHIBIT [I]** | *Francis DeSola*<br>*v.*<br>***ABS Healthcare Services, LLC and Health Option One, LLC*** | Arbitration action by Francis Desola, a former ICD agent, for declaratory relief that the ICD Agent Agreement is an unlawful and unenforceable restraint of trade and that Mr. Desola did not receive or misappropriate ICD trade secret information. | Preliminary Hearing held on April 29, 2021. |

## RELATED CIVIL CASE NO. 10

| Court / Case No. / Judge / Filing Date | Parties | Claims Asserted | Allegations | Status |
|---|---|---|---|---|
| Broward County Circuit Court<br><br>No. CACE-20-006868<br><br>Hon. Michele Towbin Singer<br><br>Filed: April 22, 2020<br><br>**Complaint and docket attached as EXHIBITS [J-1 and J-2]** | ***ABS Healthcare Services, LLC and Health Option One, LLC***<br>*v.*<br>*Ryan Kelty*<br><br>(FORMER ICD AGENT) | **COUNT I**<br>Breach of Agent Agreement<br>**COUNT II**<br>Permanent Injunctive Relief (based on Agent Agreement)<br>**COUNT III**<br>Permanent Injunctive Relief (under FUTSA)<br>**COUNT IV**<br>Misappropriation of Trade Secrets – Disgorgement<br>**COUNT V**<br>Tortious Interference with Other Agents' Agent Agreements<br>**COUNT VI**<br>Unjust Enrichment – Constructive Trust (Trade Secrets) | Paragraph 30:<br>"***Working in concert with others, including Corey Shader, Andrew Shader, Adam Beeman, Joy Stormont, Infinix Media LLC, Prodigy Health Group LLC, National Health Solutions, Inc., Alliance Marketing Corporation, Kratos Investments LLC, Health Team One LLC,*** Complete Vital Care LLC, Vital Care One LLC, Health Essential Care LLC, *and **Richard Ryscik and the following agents: Alex Geissler, Bradley Tierney, Adam Bassell, Francis Desola, Barbara Baca, Harry Slater, and James Hardill, Defendant Kelty has engaged in a scheme to steal ICD's business.***" | On May 12, 2020, Ryan Kelty filed a Motion to Compel Arbitration.<br><br>On September 1, 2020, plaintiffs filed a Notice of Voluntary Dismissal Without Prejudice of Counts I and V.<br><br>On March 19, 2021, Ryan Kelty filed Arbitration, AAA Case No. 01-21-0002-3743.<br><br>*See Related Arbitration Case No 11 below.* |

## RELATED ARBITRATION CASE NO. 11

| Court / Case No. / Judge / Filing Date | Parties | Arbitration Claims Asserted | Status |
|---|---|---|---|
| AAA Commercial Arbitration<br><br>No. 01-21-0002-3743<br><br>Arbitrator: TBA<br><br>Filed: March 19, 2021<br><br>**Complaint and docket attached as EXHIBIT [K]** | *Ryan Kelty*<br>*v.*<br>***ABS Healthcare Services, LLC and Health Option One, LLC*** | Arbitration action by Ryan Kelty, a former ICD agent, for declaratory relief that the ICD Agent Agreement is an unlawful and unenforceable restraint of trade and that Mr. Kelty did not receive or misappropriate ICD trade secret information. | Pending |

## RELATED CIVIL CASE NO. 12

| Court / Case No. / Judge / Filing Date | Parties | Claims Asserted | Allegations | Status |
|---|---|---|---|---|
| Broward County Circuit Court<br><br>No. CACE-20-006873<br><br>Hon. Jeffrey R. Levenson<br><br>Filed: April 22, 2020<br><br>**Complaint and docket attached as EXHIBITS [L-1 and L-2]** | ***ABS Healthcare Services, LLC and Health Option One, LLC***<br>*v.*<br>*Alex Geissler*<br><br>(FORMER ICD AGENT) | **COUNT I**<br>Breach of Agent Agreement<br>**COUNT II**<br>Permanent Injunctive Relief (based on Agent Agreement)<br>**COUNT III**<br>Permanent Injunctive Relief (under FUTSA)<br>**COUNT IV**<br>Misappropriation of Trade Secrets – Disgorgement<br>**COUNT V**<br>Tortious Interference with Other Agents' Agent Agreements<br>**COUNT VI**<br>Unjust Enrichment – Constructive Trust (Trade Secrets) | Paragraph 30:<br>"***Working in concert with others, including Corey Shader, Andrew Shader, Adam Beeman, Joy Stormont, Infinix Media LLC, Prodigy Health Group LLC, National Health Solutions, Inc., Alliance Marketing Corporation, Kratos Investments LLC, Health Team One LLC,*** Complete Vital Care LLC, Vital Care One LLC, Health Essential Care LLC, ***and Richard Ryscik and the following agents: James Hardill, Bradley Tierney, Adam Bassell, Francis Desola, Barbara Baca, Harry Slater, and Ryan Kelty, Defendant Geissler has engaged in a scheme to steal ICD's business.***" | On June 18, 2020, Alex Geissler filed a Motion to Compel Arbitration.<br><br>On July 14, 2020, plaintiffs filed a Notice of Voluntary Dismissal Without Prejudice of Counts I and V.<br><br>On March 19, 2021, Alex Geissler filed Arbitration, AAA Case No. 01-21-0002-3741.<br><br>*See Related Arbitration Case No 13 below.* |

## RELATED ARBITRATION CASE NO. 13

| Court / Case No. / Judge / Filing Date | Parties | Arbitration Claims Asserted | Status |
|---|---|---|---|
| AAA Commercial Arbitration<br><br>No. 01-21-0002-3741<br><br>Arbitrator: TBA<br><br>Filed: March 19, 2021<br><br>**Demand for Arbitration attached as EXHIBIT [M]** | *Alex Geissler*<br>*v.*<br>***ABS Healthcare Services, LLC and Health Option One, LLC*** | Arbitration action by Alex Geissler, a former ICD agent, for declaratory relief that the ICD Agent Agreement is an unlawful and unenforceable restraint of trade and that Mr. Geissler did not receive or misappropriate ICD trade secret information. | Pending |

## RELATED CIVIL CASE NO. 14

| Court / Case No. / Judge / Filing Date | Parties | Claims Asserted | Allegations | Status |
|---|---|---|---|---|
| Broward County Circuit Court<br><br>No. CACE-20-006872<br><br>Hon. Martin J. Bidwill<br><br>Filed: April 22, 2020<br><br>**Complaint and docket attached as EXHIBITS [N-1 and N-2]** | ***ABS Healthcare Services, LLC and Health Option One, LLC***<br>*v.*<br>*Adam Bassell*<br><br>(FORMER ICD AGENT) | **COUNT I**<br>Breach of Agent Agreement<br>**COUNT II**<br>Permanent Injunctive Relief (based on Agent Agreement)<br>**COUNT III**<br>Permanent Injunctive Relief (under FUTSA)<br>**COUNT IV**<br>Misappropriation of Trade Secrets – Disgorgement<br>**COUNT V**<br>Tortious Interference with Other Agents' Agent Agreements<br>**COUNT VI**<br>Unjust Enrichment – Constructive Trust (Trade Secrets) | **Paragraph 30:**<br>"***Working in concert with others, including Corey Shader, Andrew Shader, Adam Beeman, Joy Stormont, Infinix Media LLC, Prodigy Health Group LLC, National Health Solutions, Inc., Alliance Marketing Corporation, Kratos Investments LLC, Health Team One LLC,*** Complete Vital Care LLC, Vital Care One LLC, Health Essential Care LLC, ***and Richard Ryscik and the following agents: James Hardill, Bradley Tierney, Francis Desola, Alex Geissler, Barbara Baca, Harry Slater, and Ryan Kelty, Defendant Bassell has engaged in a scheme to steal ICD's business.***" | No service of process. |

## RELATED CIVIL CASE NO. 15

| Court / Case No. / Judge / Filing Date | Parties | Claims Asserted | Allegations | Status |
|---|---|---|---|---|
| Broward County Circuit Court<br><br>No. CACE-20-006874<br><br>Hon. William W. Haury, Jr.<br><br>Filed: April 22, 2020<br><br>**Complaint and docket attached as EXHIBITS [O-1 and O-2]** | ***ABS Healthcare Services, LLC and Health Option One, LLC***<br>*v.*<br>*Barbara Baca*<br><br>(ALLEGED FORMER ICD AGENT) | **COUNT I**<br>Breach of Agent Agreement<br>**COUNT II**<br>Permanent Injunctive Relief (based on Agent Agreement)<br>**COUNT III**<br>Permanent Injunctive Relief (under FUTSA)<br>**COUNT IV**<br>Misappropriation of Trade Secrets – Disgorgement<br>**COUNT V**<br>Tortious Interference with Other Agents' Agent Agreements<br>**COUNT VI**<br>Unjust Enrichment – Constructive Trust (Trade Secrets) | **Paragraph 30:**<br>"***Working in concert with others, including Corey Shader, Andrew Shader, Adam Beeman, Joy Stormont, Infinix Media LLC, Prodigy Health Group LLC, National Health Solutions, Inc., Alliance Marketing Corporation, Kratos Investments LLC, Health Team One LLC***, Complete Vital Care LLC, Vital Care One LLC, Health Essential Care LLC, ***and Richard Ryscik and the following agents James Hardill, Bradley Tierney, Francis Desola, Alex Geissler, Adam Bassell, Harry Slater, and Ryan Kelty, Defendant Baca has engaged in a scheme to steal ICD's business***." | No service of process. |

## RELATED CIVIL CASE NO. 16

| Court / Case No. / Judge / Filing Date | Parties | Claims Asserted | Allegations | Status |
|---|---|---|---|---|
| Broward County Circuit Court<br><br>No. CACE-20-006865<br><br>Hon. Carlos Augusto Rodriguez<br><br>Filed: April 22, 2020<br><br>**Complaint and docket attached as EXHIBITS [P-1 and P-2]** | ***ABS Healthcare Services, LLC and Health Option One, LLC***<br>*v.*<br>*Harry Slater*<br><br>(ALLEGED FORMER ICD AGENT) | **COUNT I**<br>Breach of Agent Agreement<br>**COUNT II**<br>Permanent Injunctive Relief (based on Agent Agreement)<br>**COUNT III**<br>Permanent Injunctive Relief (under FUTSA)<br>**COUNT IV**<br>Misappropriation of Trade Secrets – Disgorgement<br>**COUNT V**<br>Tortious Interference with Other Agents' Agent Agreements<br>**COUNT VI**<br>Unjust Enrichment – Constructive Trust (Trade Secrets) | **Paragraph 28:**<br>"***Working in concert with others, including Corey Shader, Andrew Shader, Adam Beeman, Joy Stormont, Infinix Media LLC, Prodigy Health Group LLC, National Health Solutions, Inc., Alliance Marketing Corporation, Kratos Investments LLC, Health Team One LLC***, Complete Vital Care LLC, Vital Care One LLC, Health Essential Care LLC, ***and Richard Ryscik and the following agents Alex Geissler, Bradley Tierney, Adam Bassell, Francis Desola, Barbara Baca, Ryan Kelty, and James Hardill, Defendant Slater has engaged in a scheme to steal ICD's business***." | On October 6, 2020, plaintiffs filed a Notice of Voluntary Dismissal Without Prejudice. |

## RELATED CIVIL CASE NO. 17

| Court / Case No. / Judge / Filing Date | Parties | Counterclaims Alleged by ABS Healthcare Services, LLC and Health Option One, LLC, Against Beeman's Future Inc. and C Shader Investments LLC | Counterclaim Allegations | Status |
|---|---|---|---|---|
| Broward County Circuit Court<br><br>No. CACE-21-002328<br><br>Chief Judge Jack Tuter<br><br>Filed: February 3, 2021<br><br>**ABS/HOO April 8, 2021 counterclaim and case docket attached as EXHIBIT [Q-1 and Q-2]** | *Empire Health Consultants LLC;* ***Beeman's Future Inc.****; Raven One Investments, LLC; Imperial Health Group Limited Liability Company; Prodigy Health Insurance Associates LLC;* ***C Shader Investments LLC****; Jamie Ryscik; Adrian Raventos; Albert Milano; and Robert Chamagua-Struogo v.* ***ABS Healthcare Services, LLC;*** ***Health Option One, LLC****; Ocean Consulting Group, Inc.; Seth Cohen; Arnold Cohen; and Robert Hodes* | **COUNT II**<br>Civil Conspiracy<br><br>**COUNT III**<br>Aiding and Abetting<br><br>**COUNT IV**<br>Permanent Injunction | **ABS/HOO Counterclaim Paragraph 1:**<br>"This action arises from Counter-defendants' perpetration of *a scheme to illicitly compete against ICD, including by setting up and operating illegally-licensed insurance agencies.* As part of this deceptive and fraudulent scheme, *Counter-defendants arranged for insurance agencies to apply and receive licenses from the State of Florida under the guise that the agencies were owned and operated by persons lawfully entitled to own and operate them. In truth, the licensed agencies are owned and controlled by a felon who has been found guilty of trafficking in opioids and who is legally barred from owning or operating a licensed insurance agency.*" | Pending |

# Exhibit 1A

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION
Case Number:

ABS Healthcare Services, LLC and
Health Option One, LLC,

      Claimants,

v.

Andrew Shader, an individual, Corey
Shader, an individual, National
Health Solutions, Inc., Infinix Media LLC,
Prodigy Health Group LLC,
Adam Beeman, an individual,
Joy Stormont, an individual, and
Alliance Marketing Corporation,

      Respondents

_____/

## CLAIMANTS' DEMAND FOR ARBITRATION

Claimants ABS Healthcare Services LLC and Health Option One, LLC, both doing business as Insurance Care Direct (collectively, "ICD"), hereby demand arbitration pursuant to Broward Circuit Court Judge Tuter's May 4, 2021, Order compelling the parties to arbitration and finding that the compelling order is made "without prejudice to the arbitrator to make determinations as to which claims are arbitrable based on a more detailed factual presentation by the Parties as to why some of the claims may not be related to the arbitration clause in the Agent Agreements" (Attached as Exhibit A) with Respondents Andrew Shader and Corey Shader (collectively, "Shaders"), National Health Solutions, Inc. ("NHS"), Infinix Media LLC ("Infinix"), Prodigy Healthy Group LLC ("Prodigy"), Adam Beeman ("Beeman"), Joy Stormont ("Stormont"), and Alliance Marketing Corporation ("Alliance") (collectively "Respondents").

1

Claimants allege as to Claimants' own acts and status and upon information and belief as to all other matters as follows:

## INTRODUCTION

1.    This case is about greed and deception.  Starting in 2013, ICD and the Shaders, including through the Shaders' company NHS and related entities, had a contractual relationship that generated significant financial returns for the Shaders.  ICD would use proprietary knowledge, practices, and relationships built up over nearly two decades in the insurance industry to provide access to tailored insurance plans and limited benefit products, marketing infrastructure, training and support, while the Shaders, through their company NHS and related entities, would market those products in exchange for lucrative marketing frees on the products and policies sold.

2.    To protect the business relationships and proprietary practices and knowledge that it had spent years building, ICD required that the agents and agencies that market its products do so exclusively, and that they agree to certain protective provisions including reasonable non-competition, non-disclosure, and non-solicitation provisions.  The Shaders and their companies were subject to agreements containing these provisions.

3.    Not wanting to sit out for the time required by their agreements with ICD or put in the work to build a competing business honestly, the Shaders decided instead to surreptitiously breach their agreements with ICD.  No later than 2017—while still under their contracts with ICD—the Shaders, along with their associates, began to conspire and set up various sham, competing enterprises to copy ICD's business model, utilizing the proprietary information that they had gained access to while working with ICD.  The Shaders, their associates, and their sham entities also solicited and induced other exclusive agents of ICD to breach their individual agreements with ICD.

4.      The Shaders and the shifting web of sham, competing entities that they and their associates have created have injured ICD's business.  In addition to interfering with ICD's contractual relationships with its exclusive agents and targeting the same customers in the same market, the Shaders and their sham entities have used proprietary information gained from ICD and interfered with ICD's relationships with numerous entities, including insurance carriers, insurance associations, and sales lead providers.

5.      ICD filed a lawsuit in state court to halt the Shaders' damaging and ongoing misconduct.  That suit, in Broward County, was subsequently compelled to arbitration, leading to this demand.

## THE PARTIES

6.      This is an action for damages in excess of $30 million dollars, exclusive of interest, costs, and attorneys' fees.

7.      Claimant ABS Healthcare Services, LLC is a Florida business headquartered in Deerfield Beach, Florida, and operates as a licensed virtual insurance agency providing consumers access to benefit products.

8.      Claimant Health Option One, LLC is a Florida business headquartered in Deerfield Beach, Florida, and acts as a licensed general insurance agency that provides marketing and compliance support and access to products including, but not limited to, limited medical, short term medical, term life, final expense, accidental death, critical illness, dental and discount medical coverage and services such as telehealth access to sub-agencies.

9.      Claimants ABS Healthcare Services, LLC and Health Option One, LLC do business under the name Insurance Care Direct, or "ICD."

10. Respondent Andrew Shader is a resident of Broward County, Florida and is *sui juris*.

11. Respondent Corey Shader is a resident of Broward County, Florida and is *sui juris*.

12. Respondent NHS is a Florida corporation doing business in Florida and headquartered at 2425 E. Commercial Blvd., Suite 300, Fort Lauderdale, FL 33308.

13. Respondent Infinix is a Florida corporation doing business in Florida and headquartered at 2425 E. Commercial Blvd. Suite 300, Fort Lauderdale, Florida 33308.

14. Respondent Prodigy is a Florida corporation doing business in Florida and headquartered at 551 NW 26th Street, Pompano Beach, Florida 33064.

15. Respondent Adam Beeman is a resident of Broward County and is affiliated with Prodigy Health Group LLC and is *sui juris*.

16. Respondent Joy Stormont is a resident of Palm Beach County and an owner of Prodigy Health Group LLC and is *sui juris.*

17. Respondent Alliance is a Florida corporation doing business in Florida and headquartered at 2425 E. Commercial Blvd., Suite 101, Fort Lauderdale, FL 33308, and is affiliated with Respondent NHS and is owned by Respondents Corey Shader and Andrew Shader.

## **<u>JURISDICTION</u>**

18. ICD initially sought to adjudicate its dispute with Andrew and Corey Shader, NHS, Infinix, Prodigy, Beeman, Stormont, and Alliance at the Broward County Circuit Court.  On May 4, 2021, the Broward County Circuit Court granted those Respondents' attempt to compel arbitration.  A copy of that order is attached as Exhibit A.

19. The Broward County Circuit Court's order compelling arbitration was made "without prejudice to the arbitrator to make determinations as to which claims are arbitrable based

on a more detailed factual presentation by the Parties as to why some of the claims may not be related to the arbitration clause of the Agent Agreements."

20.     On June 17, 2021, Andrew Shader, Corey Shader, and NHS filed their own demand for arbitration against ICD.  That demand does not include all of the parties ordered to arbitrate by the Broward County Circuit Court and seeks affirmative relief that was not presented in the Broward action.  The instant demand contains all of the parties ordered to arbitrate and the claims that were directed to arbitration along with additional claims relating to the parties compelled to arbitration.[1]

## FACTUAL ALLEGATIONS

### A.     ICD's Business

21.     ICD is a family-owned business established in 2001, which has grown into one of the nation's largest health and life insurance agencies.

22.     Among other things, ICD offers insurance plans and tailored memberships that include health benefits, products, and services ("ICD Plans") to individuals.  The ICD Plans include insurance underwritten by a diverse group of benefit companies and insurance carriers.

23.     Individuals become insureds under the ICD Plans by becoming members of the association or other group to which a master group insurance policy has been issued by the insurance carrier.  Association membership also provides access to benefit services such as telehealth.

---

[1]     ICD also asserts claims centered on prior agreements (defined below) with Andrew and Corey Shader and NHS.  Those agreements include arbitration clauses.  November 2013 Independent Agent Agreement § XIV(B); November 2013 Independent Marketer Agreement § XIV(B); March 2014 Independent Agent Agreement § XIV(B); March 2014 NHS Independent Agent Agreement § XIV(B); March 2014 NHS Independent Marketer Agreement § XIV(B).

24.     To market and sell ICD Plans, ICD enters into contracts with, among others, insurance agencies and insurance agents.

25.     ICD identifies prospective customers by purchasing "leads" from third parties or by acquiring "leads" through a subsidiary.  These leads consist of the names of individuals who have expressed a desire to obtain health insurance or benefits through insurance plans such as the ICD Plans.

26.     ICD markets to these prospective customers through insurance agencies with which it contracts.  The insurance agencies are licensed under the laws of the applicable states, including Florida.  The insurance agencies operate call centers which place calls to the prospective customers identified in the leads provided by ICD and market the ICD Plans to them.

27.     The individuals who staff the call centers and actually make the sales calls to prospective customers are insurance agents licensed under the laws of the applicable states, including Florida.  The agents list their licenses under the insurance agencies that have contracted with ICD.

28.     ICD's agreements with the agents (the "ICD Exclusive Agent Agreements" or "Agent Contracts") contain non-compete provisions and provisions protecting confidential information, including trade secrets.  The agents with whom Respondents have conspired, as set forth below, include: Barbara Baca, James Hardill, Bradley Tierney, Francis DeSola, Alex Geissler, Adam Bassell, Harry Slater, and Ryan Kelty (the "Unfaithful Agents").

**B.      <u>The Shaders and NHS Have a Long-Standing Relationship with ICD</u>**

29.     NHS is an insurance agency.  It is owned by Andrew Shader, who is also its president and CEO.  His brother, Corey Shader is also a principal of NHS.   NHS's business is to market insurance plans.

30.     The Shaders, including by and through NHS, had a long-standing contractual relationship with ICD.  Throughout the years, the Shaders and NHS entered into a series of marketing and agent agreements with ICD, including:

- The November 25, 2013, Independent Agent or Agency of Record Agreement (the "November 2013 Independent Agent Agreement") between Andrew Shader and HOO, attached hereto as Exhibit B;

- The December 15, 2013, Addendum to Independent Agent or Record Agreement (the "November 2013 Agent Agreement Addendum") between Andrew Shader and HOO, attached hereto as Exhibit C;

- The November 25, 2013, Independent Marketer Agreement (the "November 2013 Independent Marketer Agreement") between Andrew Shader and ABS, attached hereto as Exhibit D;

- The March 12, 2014, Independent Agent or Agency of Record Agreement (the "March 2014 Independent Agent Agreement") between Andrew Shader and HOO, attached hereto as Exhibit E;

- The March 12, 2014, Independent Agent or Agency of Record Agreement (the "March 2014 NHS Independent Agent Agreement") between NHS and HOO, attached hereto as Exhibit F;

- The March 12, 2014, Independent Marketer Agreement (the "March 2014 NHS Independent Marketer Agreement") between NHS and ABS, attached hereto as Exhibit G; and

- The November 13, 2015, Addendum to Independent Agent of Record Agreement (the "November 2015 Independent Agent Agreement Addendum") between Andrew Shader and HOO, attached hereto as Exhibit H.

31.     Collectively, the seven agreements immediately listed above governed the Shaders' and NHS' relationship with ICD.  For brevity, the seven agreements immediately listed above are referred to throughout as the "Pre-2019 Agreements."[2]

32.     The Pre-2019 Agreements defined how the Shaders and NHS would exclusively market and sell ICD Plans and use and safeguard ICD's confidential and trade secret materials. For example, the November 2015 Independent Agent Agreement Addendum executed by Andrew Shader contains numerous and specific exclusivity provisions and other provisions, as described below, to ensure that the Shaders and their companies would not sell competing products and would not create shell companies to hide their competition.  Yet, as explained below, that is exactly what the Shaders did.

33.     The November 2015 Independent Agent Agreement Addendum provides in paragraph 4 that the marketer's agency shall sell exclusively for ICD as follows:

> "In consideration of HOO funding Market's agency licenses in various states, the Marketer agrees to sell, offer for sale, obtain leads for sale to, contact and/or attempt to contact potential insureds for health insurance, and Sickness and Accident Membership Plans, Limited Medical Plans and/or association products ***exclusively on behalf of HOO*** and/or any company affiliated with HOO and shall not sell for any other individual or entity in accordance with the provisions of the Agreement and this Addendum."

---

[2]     The Pre-2019 Agreements contain substantially similar language, often verbatim.  For ease of reference, quotations will be to the November 2013 Independent Agent Agreement.  Parallel citations to the relevant provisions of the other agreements will be provided in footnotes where applicable.

34.     The November 2015 Independent Agent Agreement Addendum also made clear that the parties could not create shell companies to bypass the exclusivity restrictions and compete with ICD as set forth in paragraph 7:

> "The Parties mutually agree not to circumvent, avoid, bypass or obviate each other, directly or indirectly, to avoid payments of fees, commissions or other forms of compensation, by transacting any business with any individual and/or transacting any business with or creating any corporation, partnership or fictitious name."

35.     The November 2015 Independent Agent Agreement Addendum also included a restriction on competition against ICD for a period of twenty-four months following the termination of the affiliation with the Marketer as follows:

> "The Marketer agrees that it nor its officers, directors, related employees and/or agents shall compete with the known business of HOO or its affiliated companies during the term of this Agreement. Marketer further understands and agrees that the relationship between HOO and any affiliated and/or related company and its customers, employees and marketers are unique and agrees to not contact any HOO customer or any and all affiliated company's customers, employee and /or marketer for commercial purposes other than on behalf of HOO or any affiliated and/or related company *for a period of twenty-four (24) months from the date of termination of HOO's affiliation with Marketer*."

36.     The November 2015 Independent Agent Agreement Addendum also provided that the Marketer would forfeit all commissions and its book of business if it violated the parties' agreement in paragraph 9 as follows:

> "The Parties agree that any breach of this Addendum shall automatically be determined to be a material breach of this Addendum and the Agreement. As a result of such breach, this Addendum and the Agreement shall both be immediately terminated for cause and without notice. The Parties agree that a portion of the damages for such breach shall be immediately due as follows: (a) Marketer shall forfeit all outstanding commission payments due and owned to Marketer by HOO and (b) Marketer's book of business

shall immediately revert to HOO.  Marketer agrees it shall execute all documents necessary to immediately transfer said book of business to HOO.  HOO reserves all legal rights to pursue any further remedies and damages against Marketer, in accordance with Jurisdiction and Venue clauses of the Agreement."

37.     In addition, the Pre-2019 Agreements defined ICD's confidential information, and provided, among other things, that such "material shall be used exclusively in the performance of this Agreement and may not be used or distributed for any other purpose."  November 2013 Independent Agent Agreement § IX(H).[3]  Confidential information included, among other things, customer information, business plans and processes, customer lists, products, and intellectual property. *Id.* § XI.[4]  Use of confidential information was limited to "only for the purpose for which it was disclosed and only to carry out the provisions of this Agreement" and confidential information was not to be disclosed to third parties.  *Id.* § XI(C).[5]

38.     The Pre-2019 Agreements also contained robust non-solicitation clauses.  The Shaders and NHS could not "induce or attempt to induce any . . . licensed agents . . . or agents of record to discontinue their association" with ICD.  *Id.* § XII.[6]  The non-solicitation clauses also

---

[3]      *See also* November 2013 Independent Marketer Agreement § IX(H); March 2014 Independent Agent Agreement § IX(H); March 2014 NHS Independent Agent Agreement § IX(H); March 2014 NHS Independent Marketer Agreement § IX(H).

[4]      *See also* November 2013 Independent Marketer Agreement § XI; March 2014 Independent Agent Agreement § XI; March 2014 NHS Independent Agent Agreement § XI; March 2014 NHS Independent Marketer Agreement § XI.

[5]      *See also* November 2013 Independent Marketer Agreement § XI(C); March 2014 Independent Agent Agreement § XI(C); March 2014 NHS Independent Agent Agreement § XI(C); March 2014 NHS Independent Marketer Agreement § XI(C).

[6]      *See also* November 2013 Independent Marketer Agreement § XII ("INDEPENDENT MARKETER shall not induce or attempt to induce any customers, employees, licensed INDEPENDENT MARKETERs, representatives, agencies of record and/ or any INDEPENDENT MARKETERs of record to discontinue their association with ABS."); March 2014 Independent Agent Agreement § XII ("AGENT OR AGENCY OF RECORD shall not induce or attempt to

provided that the Shaders and NHS could not "induce or attempt to induce any . . . customers . . . to discontinue their association" with ICD.  *Id.*

39.    Moreover, the November 2013 Independent Agent Agreement contains Mutual Non-Disclosure Agreements that prohibited the Shaders and NHS from using ICD's confidential information for "their commercial gain in competition with" ICD.  *Id.* at pg. 6-7.

40.    The Pre-2019 Agreements also imposed a duty upon the Shaders and NHS to notify ICD "if any licensed agent, employee, associate, officer, director, principal or other representative of its business has been convicted of any felony," "misdemeanor," or "lesser crime involving moral turpitude . . ."  *Id.* § IX(I).[7]

41.    In 2019, ICD, the Shaders, and NHS entered into the Agreement for Payment of Fees, Compensation, and Residuals on January 19, 2019 (referred to throughout as "The 2019 Agreement"), attached hereto as Exhibit I.  Pursuant to the Agreement, NHS was required to exclusively market the ICD Plans.

42.    ICD negotiated the 2019 Agreement with the Shaders and NHS because the Shaders fraudulently represented that they wanted to get out of the insurance business, and the 2019 Agreement would govern as they transitioned out of the business.  Instead, that was a ruse, as the

---

induce any benefit providers, carriers, customers, employees, licensed agents, representatives, agencies of record and/ or any agents of record to discontinue their association with HOO."); March 2014 NHS Independent Agent Agreement § XII(A); March 2014 NHS Independent Marketer Agreement § XII ("INDEPENDENT MARKETER shall not induce or attempt to induce any customers, employees, licensed INDEPENDENT MARKETERs, representatives, agencies of record and/ or any INDEPENDENT MARKETERs of record to discontinue their association with ABS.").

[7]    *See also* November 2013 Independent Marketer Agreement § IX(I); March 2014 Independent Agent Agreement § IX(I); March 2014 NHS Independent Agent Agreement § IX(I); March 2014 NHS Independent Marketer Agreement § IX(I).

Shaders were already secretly working to establish businesses that would compete illegally with ICD.

43.     The Shaders and NHS represented that they needed the new agreement because while they intended to exit the business and not go after new customers, they wanted to still be able to sell certain ancillary products to existing customers.

44.     Section 5 of the 2019 Agreement provides in relevant part that the Shaders and NHS cannot solicit an actual or prospective customer of ICD or solicit independent marketers producing significant sales for ICD:

> "Non-Competition, Non-Solicitation.  For the period commencing on the Effective Date and ending three (3) years thereafter, none of the NHS Parties will knowingly, (a) encourage any person known by them to be a then current active customer or member, or known by them to be a then prospective customer or member in current and active negotiation for a Membership Plan (collectively, "Members") with the ICD Parties, that such Member should change to the health insurance program or health products or services of a company other than those provided by the ICD Parties or their current carriers or discount plans, or (b) solicit or contract with any independent marketer known by them to be then currently producing significant sales for either of the ICD Parties, or any known significant competitor of ABS or HOO, in a field which directly and materially then competes with the ICD parties."

45.     Section 5 of the 2019 Agreement also provides in relevant part that Infinix's ability to sell healthcare leads is limited as follows:

> "This paragraph (5) does not apply to independent marketers or agents used by either of the ICD parties in connection with Medicare products, including, but not limited to, "Medicare advantage" or Medicare supplements.  It is agreed by the Parties that this Agreement does not apply to Infinix Media, Inc. ("Infinix") or to its business activities, with the exception of the provisions of this Section 5 solely with respect to the sale of healthcare plans (the "Plan Exception").  The Plan Exception will terminate and no longer be applicable to Infinix upon the sale of a majority or controlling interest of its ownership."

46.    The 2019 Agreement was amended on January 29, 2019, to add the following provision with respect to Section 5:

> Notwithstanding any language to the contrary in the "Agreement for Payment of Fees, Compensation, and Residuals", ("Agreement") (executed by the NHS Parties on January 19, 2019), the ICD Parties now agree that the NHS Parties, and their affiliated Alliance Marketing Corp, may only offer, sell and bill for Wellness, Lab and Dental plans through downlines/agents identified in "Exhibit C" to the Agreement. The NHS parties have been made aware that such downline/agents should first offer and sell ICD Party core and add-on products prior to offering any other product. This paragraph shall take precedence over any contrary or conflicting terms set forth in the Agreement.

47.    As a result of the amendment, the Shaders, NHS, and their affiliated network were permitted to market other insurance plans, but only after first offering and selling ICD core and add-on products.

48.    Section 7 of the 2019 Agreement also imposed duties to maintain the confidentiality of information obtained through their business relationship:

> "Confidentiality.  Each of the Parties agrees that all proprietary or confidential information (including without limitation, the existence and terms of this Agreement and the identities of an information pertaining to customers or members of the Parties or any of their carriers or product providers) communicated to them by the other Parties will be held in strict confidence and not shared, disclosed, or used for any purpose not specifically allowed in this Agreement or required by law."

49.    The 2019 Agreement references the 2013 Independent Agent Agreement, the 2013 Independent Marketer Agreement, the 2014 NHS Independent Agent Agreement, and the 2014 NHS Independent Marketer Agreement.

C.      **Respondents' Breach of Contract and Unlawful Acts**

50.      Beginning no later than 2017, the Respondents developed a scheme to set up businesses—often run in part by Respondent Adam Beeman—that would impermissibly compete with ICD.

51.      At all times relevant hereto, Andrew Shader and Corey Shader created and funded Respondent Prodigy (a call center for health insurance sales) and Kratos (an insurance agency) with Beeman's assistance. The Shaders further supported these entities through other means, including by providing sales leads through Respondent Infinix, a company owned and controlled by the Shaders that provides health insurance leads.

52.      Andrew Shader and Corey Shader fund, own, and control Prodigy, which was designed to directly compete with ICD's insurance and benefits business in violation of the Shaders' contracts with ICD.

53.      Stormont serves as a figurehead for Prodigy, purporting to run the company as to hide its true ownership and Beeman's involvement.  Stormont is Beeman's mother, and has allowed Beeman to hide from scrutiny.  Text messages show that Stormont is paid $350 "weekly every Friday" for her role as the front person for Prodigy.  Having no industry experience, she obtained insurance licensure for the sole purpose of allowing her son, Beeman, to commit insurance fraud.

54.      Andrew and Corey Shader were also instrumental in the organization and funding of a California operation set up to illegally compete with ICD.  The California operation was fronted by ICD agent Brad Tierney and was conducted through Maxim Health, Inc. from late 2017 until the first half of 2019.  In 2019, Maxim's business was transferred to a new entity, Legacy Insurance Solutions, LLC.

55.     Respondents used Prodigy, Kratos, Maxim/Legacy, Alliance, and Infinix surreptitiously and in violation of the Pre-2019 Agreements and the 2019 Agreement to illicitly compete with ICD and steal ICD's proprietary trade secrets, business model, business relationships, agents and customer base.  Respondents have funded or otherwise supported other companies for a similar purpose and have provided financial incentives, including access to valuable leads, to agents to induce them to breach their contracts with ICD.

56.     Working in concert, Respondents have engaged in, and continue to engage in, a scheme to steal ICD's business.  To carry out the scheme, Respondents have conspired, and continue to conspire, to steal ICD's business by, among other things, setting up sham, competing entities, interfering with the ICD Exclusive Agent Agreements, illicitly soliciting ICD's customers and prospective customers, improperly interfering with ICD's business relationships with call centers, insurance carriers, lead generators, and administrators and misappropriating ICD's confidential information and trade secrets.

57.     For example, Richard Ryscik, a sprinkler salesman with no industry-related experience, is the purported president of Kratos, a licensed 21-05 Florida insurance agency.

58.     In reality, Ryscik is a façade and does not make business decisions for Kratos; rather, his role is to hide the involvement of his childhood friend: Respondent Adam Beeman. Beeman is a convicted felon for trafficking in opioids.  Because of his felon status, Beeman, and the businesses he owns and/or operates, cannot obtain appropriate licensure to operate legally.  To get around that setback, and to hide their plot from ICD, the Shaders worked with Beeman to orchestrate a scheme whereby Ryscik was labeled as the purported owner and principal of Kratos, and its affiliated companies: Health Team One, Complete Vital Care, Vital Care One, and Health Essential Care.

59.     Neither the Shaders nor NHS—or anyone else—ever informed ICD of their work and association with Beeman and Ryscik.

60.     To steal ICD's business, Andrew Shader, Corey Shader, and NHS—who were violating their own agreements with ICD—conspired with Kratos to engage numerous Unfaithful Agents who have ICD Exclusive Agent Agreements and to knowingly solicit and induce such Unfaithful Agents to violate and breach their contractual and fiduciary obligations to ICD.  Those agents include Barbara Baca, James Hardill, Bradley Tierney, Francis Desola, Alex Geissler, Adam Bassell, Harry Slater, and Ryan Kelty.  (A copy of each of their ICD Exclusive Agent Agreements is attached hereto as Exhibit J.)

61.     Respondents have interfered, and continue to improperly interfere, with ICD's relationships with call centers, including by soliciting and inducing the Unfaithful Agents to breach their contractual and fiduciary obligations to ICD, improperly recruiting agents away from call centers, improperly inducing individuals who ran and/or operated ICD exclusive call centers to open and operate call centers associated with Respondents instead of fulfilling their obligation to operate ICD call centers, and otherwise.

62.     Respondents, including by and through a conspiracy with the Unfaithful Agents, have improperly used, and continue to improperly use, ICD's confidential information and trade secrets, including customer names and marketing leads, to solicit and sell non-ICD Plans and insurance products to ICD's actual and prospective customers, in violation of ICD's Exclusive Agent Agreements.

63.     Respondents have improperly interfered, and continue to improperly interfere, with ICD's business relationships with insurance carriers, including by illicitly establishing sham,

competing entities, preventing ICD and its affiliates from maintaining valuable exclusive relationships with those carriers.

64.     Respondents have improperly interfered, and continue to improperly interfere, with ICD's business relationships with lead generation companies, including by illicitly establishing sham, competing entities, improperly diverting leads from ICD and its affiliates, and otherwise.

65.     Respondents have improperly interfered, and continue to improperly interfere, with ICD's business relationships with administrators, including by improperly entering into relationships with those administrators to the detriment of ICD's relationships with those administrators and by otherwise engaging in improper conduct that harmed ICD's relationships with those administrators.

**D.**     **Clear Evidence of Respondents' Scheme to Illicitly Compete and Harm ICD**

66.     Respondents' scheme to harm ICD is documented in a plethora of text messages that Corey Shader and Beeman, among others, had with a former associate, Christopher "Brett" Mason.

67.     Mason worked with Respondents to set up companies to illicitly compete with ICD. Tragically, Mason, a recovering addict, relapsed, overdosed, and died, due in part to the immense pressure he experienced in executing Respondents' surreptitious scheme.

68.     The text messages recovered from Mason's phone demonstrate the goal of Respondents' scheme: to rid themselves of their obligations to ICD and make as much money as possible in the process, all by stealing ICD's proprietary trade secrets, business model, and customer base.

69.     On November 18, 2018, while under contract with ICD, Corey Shader wrote in a text message that his brother "Andrew wants to take a year off and come back Cohen free,"

referring to Seth Cohen, one of ICD's founders.  But Corey Shader then wrote "we can't stop for a year" because there was "Too much market share to lose."

70.     The text messages present an illuminating account of Respondents' thoughts and impressions during their elaborate scheme.  For example, the messages show how Beeman, among others, sought to hide the creation of competing companies, seeking to mask their existence until Respondents' non-competes and other obligations to ICD had expired.[8]

71.     Respondents even resorted to using fake names and other aliases to hide their scheme.  Beeman, for example, went as far as to adopt Ryscik's persona and falsely claim to be Ryscik during the course of business.[9]

72.     Additionally, Respondents and the Unfaithful Agents texted about how they would pay certain sham license holders for use of their names and licenses.[10]  The messages also detail

---

[8]     For example, on March 12, 2019, Beeman texted Mason and they had the following exchange: Beeman: "The Courier only [knows] your name right?" Mason: "No. She knows the name of the company."  Beeman: "God. Get another courier."  Mason: "Why is that a problem?"  Beeman: "Cause it is."  Also, on October 1, 2019, Beeman instructed Ryan Kelty, an ICD Agent, that "When answering custo calls.  We answer 'Customer Service' not the name of the company.  Fix this not [sic] please."  Additionally, on March 26, 2019, Beeman asked that his mother's name, Stormont, be used on communications to hide his involvement in the scheme, writing Mason to ask that he "Send me an email from joy saying your very disappointed in the process so far blah blah maybe HII would have been a better choice something along those lines bitching about no core product."

[9]     For example, on March 6, 2019, Beeman texted Kelty and Mason that "I'm Richard [Ryscik] btw" to which Kelty replied "Do we have to [be] different people as well?"  Beeman replied "Naw."

[10]     For example, on July 24, 2019, Beeman wrote to Kelty and Mason: "U guys want a female lic[ense] that will always be there for 400$ a month.  Doing a friend in prison a favor.  My boy Enzos chick.  It's a lock and u can buy all the states and not worry."  Also, on August 8, 2019, Beeman wrote "Just emailed u Ryan with the chick issabel with will be the license ur gonna use" and "We are gonna send her 55$ ASAP for passing as a bonus.  And 400$ monthly."  "So do 500 and then direct deposit 400$ a month I'm sure she will claim whatever to get the most."

how Respondents facilitated the scheme to steal ICD's business by, among other things, funding the scheme and providing other financial and material support.

73.     Although Respondents took great pains to hide their scheme, their habit of texting about it left an irrefutable trail.

**E.     Respondents' Conduct Has Caused ICD Extensive Harm**

74.     As a direct result of Respondents' acts, ICD has experienced, and is continuing to experience, a substantial reduction in business, amounting to tens of millions of dollars in lost business.

**COUNT I**
**Breach of Contract – Pre-2019 Agreements**
**(Against Andrew Shader, Corey Shader, NHS)**

75.     ICD re-alleges the allegations set forth in paragraphs 1-74.

76.     The Pre-2019 Agreements, as amended, are valid and binding contracts between the above-mentioned Respondents and ICD, supported by mutual consideration.

77.     ICD has performed each and all of its obligations under the Pre-2019 Agreements.

78.     All conditions precedent with respect to the bringing of this action for breach of the Pre-2019 Agreements have been performed, waived, or excused, so that there are no unperformed conditions precedent precluding this action.

79.     The above Respondents have materially breached the Pre-2019 Agreements by, among other things:

> • Hiring a convicted felon (Beeman) to work for them without informing ICD as required by the Pre-2019 Agreements (*e.g.,* November 2013 Independent Agreement Agreement § IX(I); November 2013 Independent Marketer Agreement § IX(I); March 2014 Independent Agent Agreement § IX(I); March 2014 NHS

Independent Agent Agreement § IX(I); March 2014 NHS Independent Marketer Agreement § IX(I));

- Soliciting ICD customers, members, or prospective customers to switch to, or sign up with, health insurance programs or health products or services other than those provided by ICD (*e.g.,* November 2015 Independent Agent Agreement Addendum ¶¶ 4, 6, 7; November 2013 Agreement §§ IX(H), XII; November 2013 Independent Marketer Agreement §§ IX(H), XII; March 2014 Independent Agent Agreement §§ IX(H), XII; March 2014 NHS Independent Agent Agreement § XII(A); March 2014 NHS Independent Marketer Agreement §§ IX(H), XII));

- Selling products for Respondents' competing business, including by conspiring with the Unfaithful Agents (*e.g.,* November 2015 Independent Agent Agreement Addendum ¶¶ 4, 6, 7; November 2013 Agreement § XII; November 2013 Independent Marketer Agreement § XII; March 2014 Independent Agent Agreement § XII; March 2014 NHS Independent Agent Agreement § XII(A); March 2014 NHS Independent Marketer Agreement § XII));

- Creating and utilizing Infinix to provide leads in direct violation of the Pre-2019 Agreements (*e.g.,* November 2015 Independent Agent Agreement Addendum ¶¶ 4, 6, 7; November 2013 Agreement § XII; November 2013 Independent Marketer Agreement § XII; March 2014 Independent Agent Agreement § XII; March 2014 NHS Independent Agent Agreement § XII; March 2014 NHS Independent Marketer Agreement § XII);

- Crafting and executing a plan to create, fund, and support Prodigy, Kratos, and Maxim/Legacy, among others, in order to steal ICD's business model, agents and

customer base and directly compete with ICD (*e.g.,* November 2015 Independent Agent Agreement Addendum ¶¶ 4, 6, 7; November 2013 Agreement § XII; November 2013 Independent Marketer Agreement § XII; March 2014 Independent Agent Agreement § XII; March 2014 NHS Independent Agent Agreement § XII; March 2014 NHS Independent Marketer Agreement § XII); and

- Misappropriating and misusing ICD's confidential business and trade secret information, including, but not limited to, information pertaining to ICD's actual and prospective customers and members (*e.g.,* November 2015 Independent Agent Agreement Addendum ¶¶ 4, 6, 7; November 2013 Independent Agent Agreement §§ IX(H), XI(C); March 2014 Independent Agent Agreement §§ IX(H), X(C); March 2014 NHS Independent Agent Agreement §§ IX(H), IX(C); March 2014 NHS Independent Marketer Agreement §§ IX(H), IX(C)).

80.    ICD has been, and continues to be, damaged by these Respondents' material breaches of the Pre-2019 Agreements, and Respondents have forfeited all outstanding commission payments and marketing fees.

## COUNT II
### Breach of Contract – 2019 Agreement
### (Against Andrew Shader, Corey Shader, NHS, Infinix, and Alliance)

81.    ICD re-alleges the allegations set forth in paragraphs 1-74.

82.    The 2019 Agreement, as amended, is a valid and binding contract between above Respondents and ICD, supported by mutual consideration.

83.    ICD has performed each and all of its obligations under the 2019 Agreement.

84. All conditions precedent with respect to the bringing of this action for breach of the 2019 Agreement have been performed, waived, or excused, so that there are no unperformed conditions precedent precluding this action.

85. In particular, ICD has provided written notice of breach to the above Respondents and has given these Respondents a reasonable opportunity to investigate and cure the breach, but Respondents have failed to do so.

86. The above Respondents have materially breached the 2019 Agreement by, among other things:

    a. Soliciting ICD customers, members, or prospective customers to switch to, or sign up with, health insurance programs or health products or services other than those provided by ICD;

    b. Selling products for Respondents' competing business, including by conspiring with the Unfaithful Agents;

    c. Utilizing Infinix to provide leads in direct violation of the 2019 Agreement;

    d. Creating, funding, and supporting Respondent Prodigy, Kratos, and Maxim/Legacy, among others, in order to steal ICD's business model, agents and customer base and directly compete with ICD; and

    e. Misappropriating and misusing ICD's confidential business and trade secret information, including, but not limited to, information pertaining to ICD's actual and prospective customers and members.

87. ICD has been, and continues to be, damaged by these Respondents' material breaches of the 2019 Agreement.

**COUNT III**
**Tortious Interference With Agent Agreements**
**(Against All Respondents)**

88.     ICD re-alleges the allegations set forth in paragraphs 1-74.

89.     ICD entered into valid contracts with the Unfaithful Agents.

90.     These contracts, the ICD Exclusive Agent Agreements, include confidentiality, non-solicitation, and exclusivity provisions.

91.     Respondents at all material times were aware of the existence and terms of the ICD Exclusive Agent Agreements.

92.     Respondents, individually or in concert with co-conspirators, have improperly interfered, and continue to improperly interfere, with the ICD Exclusive Agent Agreements by soliciting and inducing or otherwise causing the Unfaithful Agents to violate and breach their contractual obligations and fiduciary obligations to ICD, including the exclusivity, non-solicitation and confidentiality provisions of the ICD Exclusive Agent Agreements.

93.     Respondents' actions were intentional and unjustified.

94.     As a result of Respondents' actions, the Unfaithful Agents breached the ICD Exclusive Agent Agreements, causing damage to ICD.

95.     ICD has been and continues to be damaged as a result of Respondents' tortious interference with the ICD Exclusive Agent Agreements.

96.     Respondents' tortious interference with ICD's Exclusive Agent Agreements has caused ICD to suffer continuing irreparable harm for which it has no adequate remedy at law.

**COUNT IV**
**Tortious Interference with Business Relationships**
**(Against All Respondents)**

97.     ICD re-alleges the allegations set forth in paragraphs 1-74.

98.     ICD had business relationships with individuals that were members of the ICD Plans as a result of ICD's marketing and related efforts.

99.     ICD also had business relationships with call centers, insurance carriers, lead generators, and administrators.

100.    Through the acquisition and development of the sales leads, ICD has a protectable business relationship with consumers identified in the leads, which constituted identifiable prospective customers of ICD who in all probability would have participated in an ICD Plan.

101.    ICD has a legal right in these existing and prospective business relationships.

102.    Respondents at all material times were aware of ICD's current and prospective business relationships.

103.    Respondents have improperly interfered, and continue to improperly interfere, with ICD's business relationships with actual and prospective customers by inducing or otherwise causing existing and prospective customers to not do business with ICD.

104.    Respondents have improperly interfered, and continue to improperly interfere, with ICD's business relationships with call centers, including by soliciting and inducing the Unfaithful Agents to breach their contractual and fiduciary obligations to ICD, improperly recruiting agents away from call centers, improperly inducing individuals who ran and/or operated ICD exclusive call centers to open and operate call centers associated with Respondents instead of fulfilling their obligation to operate ICD call centers, and otherwise.

105.    Respondents have improperly interfered, and continue to improperly interfere, with ICD's business relationships with insurance carriers, including by illicitly establishing sham, competing entities, preventing ICD and its affiliates from maintaining valuable exclusive relationships with those carriers, and otherwise.

106.    Respondents have improperly interfered, and continue to improperly interfere, with ICD's business relationships with administrators by entering into relationships with those administrators to the detriment of ICD's relationships with those administrators and by otherwise engaging in improper conduct that harmed ICD's relationships with those administrators.

107.    Respondents' actions were intentional and unjustified.

108.    ICD has been and continues to be damaged as a result of Respondents' tortious interference with its business relationships with actual and prospective customers, call centers, insurance carriers, and lead generators.

109.    Respondents' tortious interference with ICD's business relationships has caused ICD to suffer continuing irreparable harm for which it has no adequate remedy at law.

**COUNT V**
**Misappropriation of Trade Secrets**
**(Against All Respondents)**

110.    ICD re-alleges the allegations set forth in paragraphs 1-74.

111.    Respondents had access to ICD's trade secret information, including: business model and strategy, customer information, member information, sales information, internal business procedures and strategies ("Trade Secrets").

112.    The Trade Secrets were developed by ICD through substantial effort and expense.

113.    ICD derives significant economic value from the Trade Secrets, which are not generally known to, and not readily ascertainable by, other persons who may be able to obtain economic value from their disclosure.

114.    ICD has taken reasonable steps to maintain the secrecy and confidentiality of the Trade Secrets, including through agreements with third parties that prohibit disclosure and unauthorized use of the Trade Secrets.

115.    Respondents at all material times have known of the existence of the Trade Secrets.

116.    Respondents have misappropriated the Trade Secrets by and through improper means by, among other things, inducing the Unfaithful Agents to breach their duties and contractual obligations to maintain the secrecy of the Trade Secrets and using the Trade Secrets to solicit and poach ICD's actual and prospective customers and entities having business relationships with ICD.  Additionally, Respondents knew or had reason to know that the Trade Secrets were obtained by improper means.  Respondents knew they were using this Trade Secret information without ICD's permission.

117.    Respondents' misappropriation of the Trade Secrets has damaged (and continues to damage) ICD.

118.    Respondents' misappropriation of ICD's Trade Secrets has caused ICD to suffer continuing irreparable harm for which it has no adequate remedy at law.

**COUNT VI**
**Conspiracy to Misappropriate Trade Secrets**
**(Against All Respondents)**

119.    ICD re-alleges the allegations set forth in paragraphs 1-74.

120.    The Unfaithful Agents had access to ICD's trade secret information, including: business model and strategy, customer information, member information, sales information, internal business procedures and strategies ("Trade Secrets").

121.    The Trade Secrets were developed by ICD through substantial effort and expense.

122.    ICD derives significant economic value from the Trade Secrets, which are not generally known to, and not readily ascertainable by, other persons who may be able to obtain economic value from their disclosure.

123. ICD has taken reasonable steps to maintain the secrecy and confidentiality of the Trade Secrets, including through agreements that prohibit disclosure and unauthorized use of the Trade Secrets.

124. Respondents at all material times have known of the existence of the Trade Secrets.

125. Respondents have conspired with the Unfaithful Agents to misappropriate the Trade Secrets by and through improper means by, among other things, using them to solicit and poach ICD's actual and prospective customers and entities having business relationships with ICD.

126. Respondents' conspiracy to misappropriate the Trade Secrets has damaged (and continues to damage) ICD.

127. Respondents' conspiracy to misappropriate ICD's Trade Secrets has caused ICD to suffer continuing irreparable harm for which it has no adequate remedy at law.

**COUNT VII**
**Violation of Non-Compete, Fla. Stat. Chapter 542**
**(Against Corey Shader, Andrew Shader and NHS)**

128. ICD re-alleges the allegations set forth in paragraphs 1-74.

129. The Pre-2019 Agreements and 2019 Agreement prohibits the above-named Respondents from competing against ICD.

130. ICD has legitimate business interests that justify the restrictive covenant in the Pre-2019 Agreements and the 2019 Agreement.

131. Those legitimate business interests include: business model and strategy, customer information, member information, sales information, internal business procedures and strategies, information, substantial relationships with prospective and existing customers, Trade Secrets and valuable confidential information that does not qualify as trade secrets, and goodwill.

132.     The restrictive covenant is reasonably necessary to protect ICD's legitimate business interests.

133.     Respondents above have violated the restrictive covenant by competing against ICD and misusing ICD's protected information, including the Trade Secrets.

134.     Above Respondents' violation of the restrictive covenant has damaged and will continue to damage ICD.

### COUNT VIII
### Declaratory Judgment, Fla. Stat. Chapter 86
### (Against Corey Shader, Andrew Shader and NHS)

135.     ICD re-alleges the allegations set forth in paragraphs 1-74.

136.     The 2019 Agreement provides that ICD shall make specified payments to Respondents above.

137.     Because Respondents have been faithless in the performance of the Agreement and have not properly performed their obligations under the Agreement, they are not entitled to the payments under the Agreement.

138.     Above Respondents' actions in breach of the Agreement and Florida law have caused (and continue to cause) great damage to ICD.

139.     The damage to ICD exceeds, at the least, the payments that ICD is to make under the Agreement on April 10, 2020, and, likely, for the foreseeable future.

140.     Because of this damage caused by Respondents, ICD believes that it does not have to make the payments provided for in the Agreement.

141.     ICD therefore is in need of a declaration that it does not have to make payments to Respondents under the Agreement and that, to the extent any payment is owed, it can set-off the payment against all damages it has suffered by reason of Respondents' actions.

142.     There is a bona fide, actual, present practical need for the declaration.

**COUNT VIIII**
**Conspiracy to Breach the ICD Exclusive Agent Agreements**
**(Against All Respondents)**

143.     ICD re-alleges the allegations set forth in paragraphs 1-74.

144.     The ICD Exclusive Agent Agreements are valid and binding contracts between ICD and the Unfaithful Agents.

145.     ICD has performed all of its obligations under the ICD Exclusive Agent Agreements.

146.     Respondents have conspired, and continue to conspire with the Unfaithful Agents and others, including, Kratos, Health Team One, Complete Vital Care, Vital Care One, Health Essential Care, and Ryscik to do an unlawful act: breach the ICD Exclusive Agent Agreements, and in particular the confidentiality, non-solicitation, and exclusivity provisions of those agreements.

147.     Respondents and the Unfaithful Agents have taken, and continue to take, overt acts in furtherance of the conspiracy.

148.     Pursuant to this conspiracy, the Unfaithful Agents breached their ICD Exclusive Agent Agreements.

149.     ICD has been, and continues to be, damaged by the conspiracy to breach the ICD Exclusive Agent Agreements.

150.     Respondents' conspiracy to breach ICD's Exclusive Agent Agreements has caused ICD to suffer continuing irreparable harm for which it has no adequate remedy at law.

**COUNT X**
**Injunctive Relief**
**(Against All Respondents)**

151.    ICD re-alleges the allegations set forth in paragraphs 1-74.

152.    As a result of Respondents' continuing conduct with respect to stealing ICD's business, interfering with ICD's contractual and business relationships, illicitly soliciting ICD's customers and prospective customers, and misappropriating ICD's confidential information and trade secrets, ICD has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

153.    Injunctive relief is necessary to prevent the ongoing harm being suffered by ICD as a result of Respondents' ongoing actions.

154.    ICD has a substantial likelihood of success on the merits.

155.    An injunction will serve the public interest.

156.    ICD will suffer additional irreparable harm in the future if Respondents are allowed to continue their injurious conduct.

157.    The interests of third persons and of the public will be served by the entry of an injunction.

158.    An injunction can be practically and adequately framed and enforced.

**COUNT XI**
**Fraudulent Inducement**
**(Against Andrew Shader, Corey Shader, NHS)**

159.    ICD re-alleges the allegations set forth in paragraphs 1-74.

160.    Prior to the execution of the 2019 Agreement, in November and December 2018, and January 2019, the Shaders and NHS represented to ICD, through Seth Cohen, that they were

performing in compliance with their obligations under the Pre-2019 Agreements and/or failed to disclose that they were violating their obligations under the Pre-2019 Agreements.

161.    The representation by the Shaders and NHS that they were compliant with their obligations under the Pre-2019 Agreements were knowingly false and were intended to induce detrimental reliance by ICD.  The failure of the Shaders and NHS to disclose to ICD the fact that they were then in breach of the Pre-2019 Agreements was an omission of material fact intended to induce detrimental reliance by ICD.

162.    Prior to the execution of the 2019 Agreement, in November and December 2018, and January 2019, the Shaders and NHS further represented to ICD, trough Seth Cohen, that they intended to perform their obligations under that agreement and/or failed to disclose that they had no intention of performing their obligations under the 2019 Agreement and were, in fact, already taking action that would be inconsistent with, and a violation of, the 2019 Agreement.

163.    The representation by the Shaders and NHS that they intended to perform their obligations under the 2019 Agreement was false in that the Shaders and NHS had no intention of performing their obligations under the 2019 Agreement and was intended to induce detrimental reliance by ICD.  The failure of the Shaders and NHS to disclose that they were already taking action that would be inconsistent with, and in violation of, the 2019 Agreement was an omission of material fact intended to induce detrimental reliance by ICD.

164.    As a result of its reliance upon these knowingly false representations and intentional omissions, ICD entered into the 2019 Agreement.

165.    ICD has been damaged as a result of the fraudulent representations and omissions of the Shaders and NHS.

## **RELIEF DEMANDED**

WHEREFORE, ICD respectfully requests that this Court award the following relief:

A.      All compensatory damages for all injuries suffered as a result of Respondents' wrongdoing;

B.      Pre-judgment and post-judgment interest;

C.      Attorney's fees and costs;

D.      Preliminary and permanent injunctive relief;

E.      A declaration that ICD is not required to make payments under the Agreement; and

F.      All other relief as may be appropriate.

## **REQUEST FOR THREE ARBITRATORS**

Pursuant to Rules 16 and L-2(a) of the American Arbitration Association Commercial Arbitration Rules and Mediation Procedures, ICD respectfully requests that three arbitrators be appointed to this dispute.  As a large, complex case, the AAA's Large, Complex Commercial Disputes procedures apply to this action, as the present claim is at least $1,000,000 exclusive of claimed interests, arbitration fees, and costs.  This is a highly complex commercial dispute that necessitates a three-member panel.  Accordingly, ICD respectfully request a three-member panel be appointment.

Dated:  July 11, 2021      Respectfully submitted,

            BOIES SCHILLER FLEXNER LLP

By:  */s/ Sigrid S. McCawley*   
    Sigrid S. McCawley, Esq.
    Fla. Bar No. 129305
    Carlos M. Sires, Esq.
    Fla. Bar No. 319333
    401 East Las Olas Boulevard
    Suite 1200
    Fort Lauderdale, Florida 33301
    Telephone:  (954) 356-0011
    Facsimile: ( 954) 356-0022
    smccawley@bsfllp.com
    csires@bsfllp.com

    *Attorneys for Claimants*