UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 0:21-CV-60859-RKA

ABS HEALTHCARE SERVICES, LLC,
HEALTH OPTION ONE, LLC and
ONE STOP QUOTES, INC.

                Plaintiffs,

vs.

ANDREW SHADER, COREY SHADER,
NATIONAL HEALTH SOLUTIONS, INC.,
INFINIX MEDIA LLC, PRODIGY
HEALTH GROUP LLC, ADAM BEEMAN,
JOY STORMONT, ALLIANCE MARKETING
CORPORATION, KRATOS INVESTMENTS LLC,
HEALTH TEAM ONE LLC, RICHARD RYSCIK,
SCOTT OFFUTT, BEEMAN'S FUTURE INC.,
CS MARKETING LLC, and C SHADER
INVESTMENTS LLC,

                Defendants.

_____/

**RESPONSE TO DEFENDANTS' JOINT MOTION TO
TEMPORARILY LIFT STAY AND FOR IMPOSITION OF
SANCTIONS PURSUANT TO THE COURT'S INHERENT AUTHORITY AND
<u>REQUEST FOR ORAL ARGUMENT</u>**

Carlos M. Sires, Esq.
(Fla. Bar No. 319333)
Sigrid S. McCawley, Esq.
(Fla. Bar No. 129305)
**BOIES SCHILLER FLEXNER LLP**
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone:  (954) 356-0011
Facsimile: (954) 356-0022
csires@bsfllp.com
smccawley@bsfllp.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... iii

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND .......................................................................................................... 2

III.    STANDARD OF REVIEW .......................................................................................... 3

IV.     ARGUMENT ............................................................................................................... 4

       A.      Defendants Make Reckless and False Accusations Against Plaintiffs And Their
              Attorneys To Paint Them In A Negative Light. ...................................................... 4

             1.      Defendants Falsely Accused Plaintiffs Of Feeding A Story To The Press
                   When It Is Actually Defendants Who Are Issuing Defamatory Press
                   Releases................................................................................................... 5

             2.      It Was Reasonable For Plaintiffs To Bring This Claim In This Court
                   Instead Of Before An Arbitrator. .............................................................. 6

             3.      Plaintiffs Are Not Engaging In Vexatious Litigation; Rather They Are
                   Defending Their Business Against Multiple Attacks By Multiple Parties
                   In Different Jurisdictions. ......................................................................... 8

             4.      Defendant Beeman's Felony Conviction And The Death Of Christopher
                   Brett Mason Are Relevant To The Complaint. .......................................... 9

             5.      Defendants' Unsupported, Throwaway Accusations Should Not Be
                   Considered. .............................................................................................. 12

       B.      Plaintiffs Filed This Meritorious Complaint In Good Faith And Have Not
               Abused The Judicial Process. ............................................................................. 12

             1.      Defendants' Are Not Entitled To Re-Litigate Their Motion To Dismiss. 13

             2.      This Court Is Under No Special Obligation to Dismiss a Meritorious
                   RICO Action. ........................................................................................... 14

             3.      Filing A Meritorious Complaint Does Not Rise to the Extreme Level Of
                   Sanctionable Conduct. ............................................................................. 16

             4.      Plaintiffs Have Engaged In Good Faith Litigation. .................................. 18

       C.      Dismissal With Prejudice Is Unwarranted. ......................................................... 19

i

V.     CONCLUSION..................................................................................................................... 20

VI.    REQUEST FOR ORAL ARGUMENT ............................................................................ 20

CERTIFICATE OF SERVICE ................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Absolute Activist Value Master Fund Limited v. Devine*,
    826 Fed. Appx. 876 (11th Cir. 2020) ................................................ 17

*Atl. Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*,
    398 U.S. 281 (1970) ....................................................................... 9

*Barash v. Kates*,
    585 F. Supp. 2d 1347 (S.D. Fla. 2006) ...................................... 13, 16

*Bocciolone v. Solowsky*,
    2009 WL 10666926 (S.D. Fla. Apr. 20, 2009) ........................... 14, 16

*BPI Sports, LLC v. ThermoLife Int'l, LLC*,
    2021 WL 2583493 (S.D. Fla. Feb. 25, 2021) ................................ 3, 12

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ....................................................................... 4, 18

*Collar v. Abalux, Inc.*,
    806 Fed. Appx. 860 (11th Cir. 2020) ............................................... 16

*Doria v. Class Action Servs., LLC*,
    261 F.R.D. 678 (S.D. Fla. 2009) ..................................................... 17

*Figueroa Ruiz v. Alegria*,
    896 F.2d 645 (1st Cir. 1990) ........................................................... 15

*GE Med. Sys S.C.S. v. SYMX Healthcare Corp.*,
    2021 WL 821433 (S.D. Fla. Mar. 4, 2021) ...................................... 12

*Gilchrist v. State Farm Mut. Auto. Ins. Co.*,
    390 F.3d 1327 (11th Cir. 2004) ....................................................... 10

*Gov't Emps. Ins. Co. v. Nealey*,
    262 F. Supp. 3d 153 (E.D. Pa. 2017) .............................................. 18

*Jones v. DirecTV, Inc.*,
    381 F. App'x 895 (11th Cir. 2010) .................................................. 15

*Kaye v. D'Amato*,
    357 F. App'x 706 (7th Cir. 2009) .................................................... 15

*Miccosukee Tribe of Indians of Florida v. Cypress,*
  686 Fed. Appx. 823 (11th Cir. 2017) ........................................................ 16

*Moss v. BMO Harris Bank, N.A.,*
  258 F. Supp. 3d 289 (E.D.N.Y. 2017) ...................................................... 15

*New Hampshire v. Maine,*
  532 U.S. 742 (2001) .................................................................................. 14

*Obukwelu v. Bd. of Trustees Fla. State Univ.,*
  837 F. App'x 686 (11th Cir. 2020) ........................................................... 19

*Oceanside Lauderdale, Inc. v. Ocean 4660, LLC,*
  2010 WL 2044893 (S.D. Fla. May 24, 2010) ........................................... 17

*Purchasing Power, LLC v. Bluestem Brands, Inc.,*
  851 F.3d 1218 (11th Cir. 2017) ......................................................... *passim*

*Riley v. Unified Caring Ass'n,*
  2014 WL 7335029 (D. Wyo. Dec. 19, 2014) ............................................ 14

*Suntrust Bank v. Ruiz,*
  2014 WL 5321094 (S.D. Fla. Oct. 17, 2014) ............................................ 14

*Sutakovic v. CG RYC, LLC,*
  2018 WL 2766206 (S.D. Fla. June 8, 2018) ............................................... 3

*United States v. Turkette,*
  452 U.S. 576 (1981) .................................................................................. 15

*Vernon v. Ziel,*
  2020 WL 4501802 (S.D. Fla. June 15, 2020) ............................................. 9

*Weinstock v. Storm Tight Windows, Inc.,*
  2021 WL 3239460 (S.D. Fla. July 20, 2021) ...................................... 12, 17

*Zocaras v. Castro,*
  465 F.3d 479 (11th Cir. 2006) .................................................................. 19

## Other Authorities

35B C.J.S. Federal Civil Procedure § 1400 ...................................................... 4

*Blue Health Insurers Reach Tentative Antitrust Settlement for $2.7 Billion,*
  THE WALL STREET JOURNAL, https://www.wsj.com/articles/blue-health-insurers-reach-
  tentative-antitrust-settlement-for-2-7-billion-11600967231 ...................... 6

## I.      <u>INTRODUCTION</u>

After the Court already ruled upon Defendants' Motion to Dismiss and properly compelled arbitration of Plaintiffs' claims, Defendants now attempt to repackage those same arguments in a "sanctions motion," seeking dismissal with prejudice as the sanction, in an effort to get a second bite at the apple.  To be clear, Plaintiffs filed a meritorious RICO action and expect to prevail on their claims in arbitration.  Plaintiffs' claims are supported by ample evidence, including contemporaneous text messages and public records, and were filed after a diligent investigation. Plaintiffs filed this action in federal court, not arbitration, because none of the Defendants are direct signatories to an arbitration provision, several were not parties to any earlier disputes, and Defendants have previously flip-flopped on whether they were going to litigate in court or via arbitration.  Thus Plaintiffs could not have filed in arbitration until all Defendants expressly consented to arbitration through their motion to compel arbitration [Dkt. 34].  When Plaintiffs then sought consent to arbitration, it was Defendants who refused.

Lacking grounds for sanctions, Defendants resort to making baseless allegations against Plaintiffs and their attorneys, relying upon an incomplete and misleading summary of earlier litigation.  Defendants are seeking to get a dig in at all costs, regardless of the truth or accuracy of their claims.  Indeed, although they come to this Court purporting to complain about too many lawsuits and negative press coverage, only *two days* after filing this Motion, Defendants and the same Defense counsel used another shell company to file a baseless lawsuit against Plaintiffs ABS Healthcare Services, LLC and Health Option One, LLC (together, "ICD") in California. Remarkably, this new filing was accompanied by a defamatory press release that was issued for no reason other than to harass, disparage, and tarnish ICD—precisely what Defendants incorrectly accused Plaintiffs of doing here.

Whereas Plaintiffs filed this case in good faith and did not—contrary to Defendants' false, unsupported speculation—engage in a coordinated publicity campaign, Defendants' new lawsuit appears to have been filed primarily to perpetuate and publicize false smears against ICD. Defendants' argument for sanctions here is clearly pretextual and retaliatory because Defense counsel James Gale issued a defamatory press release targeting Plaintiffs only two days after filing this Motion. Defendants apparently prefer to focus on distracting sideshows rather than the merits of this suit or the other claims raised by ICD. Plaintiffs will not take the bait or sink into the mud with Defendants. Plaintiffs filed this action in good faith; it is Defendants' conduct that needs to be reviewed.

Absent a valid legal or factual basis for their motion, Defendants instead ask this Court to accept their unsupported conjecture and misleading narrative to leap over the extremely high bar of bad faith. Although the Court has inherent power to sanction baseless lawsuits founded on bad faith or meritorious lawsuits brought for the purpose of harassment, neither circumstance is present in this action. Instead, as Defendants acknowledge, many of the parties to this action are involved in ongoing litigation in state and federal court, as well as in arbitration, relating to the fact that ICD has unearthed a complex criminal scheme hatched by Defendants to steal ICD's business and trade secrets and flout legal regulations protecting insurance consumers. Plaintiffs have every right to pursue their meritorious RICO claims first in this Court and now in arbitration pursuant to this Court's order. Because no sanctions are warranted here, Defendants' Motion should be denied.

## II.    **BACKGROUND**

On April 21, 2021, Plaintiffs filed this RICO claim against a group of fifteen Defendants who are actively perpetuating an ongoing racketeering enterprise. [Dkt. 1 ("Compl.")]. At the time Plaintiffs filed this case, only a handful of the parties involved had been ordered to arbitrate certain other claims, none of which involved the federal RICO statute. On May 4, 2021, the

Broward County Circuit Court ordered the parties to that action, which included nine of the Defendants here, to arbitrate. *ABS Healthcare Servs., LLC v. Shader*, No. CACE20006195 (Fla. 17th Cir. Ct. Apr. 9, 2020). And on June 17, 2021, three Defendants in this action, Corey Shader, Andrew Shader, and NHS, filed a claim before the AAA against ICD. *Shader v. ABS Healthcare Servs., LLC*, No. 1-21-0004-3550 (AAA June 17, 2021).

On June 4, 2021, Defendants filed their Motion to Dismiss this case arguing, *inter alia*, that Plaintiffs' claims should be compelled to arbitration. [Dkt. 34]. After reviewing Defendants' dismissal motion, Plaintiffs consented to Defendants' demand for arbitration now that Defendants had, for the first time, provided their express consent to arbitration. [Dkt. 49 at 1]. Plaintiffs proposed a stipulation referring their claims to arbitration and staying the action pending the resolution of the arbitration. *Id.* Defendants refused, asserting that they wanted the Court to rule on the other aspects of their Motion, namely their request for a dismissal with prejudice. [Dkt. 50]. Due to Defendants' obstruction, this Court was forced to issue a ruling compelling the case to arbitration. Defendants now continue to waste this Court's time and resources by lodging a frivolous sanctions motion in a stayed case.

## III.   STANDARD OF REVIEW

A Court's "inherent power" to award dismissal and attorneys' fees is premised on a finding of bad faith, which must be shown by clear and convincing evidence. *Sutakovic v. CG RYC, LLC*, 2018 WL 2766206, at *6 (S.D. Fla. June 8, 2018) ("[T]o unlock a Court's inherent power, there must be a finding of bad faith[.]"); *see also BPI Sports, LLC v. ThermoLife Int'l, LLC*, 2021 WL 2583493, at *5 (S.D. Fla. Feb. 25, 2021), *report and recommendation adopted*, 2021 WL 2946170 (S.D. Fla. July 14, 2021) ( Courts "in this District have held that 'fundamentally penal' sanctions, such as dismissals or an award of attorneys' fees, require proof by clear and convincing evidence.").

Before awarding sanctions under its inherent power, "a court *must make an express finding* that the sanctioned party's behavior constituted or was tantamount to bad faith." 35B C.J.S. Federal Civil Procedure § 1400 (emphasis added). A court should be cautious in exerting its inherent power and "must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). Because the court's inherent power is so potent, it should be exercised "with restraint and discretion." *Id.* at 44; *see also Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (same).

## IV.   ARGUMENT

It would be inappropriate for the Court to wield its inherent power to impose sanctions on litigants, such as Plaintiffs, who acted in good faith simply because Defendants are unhappy that this litigation makes them look bad. Defendants' argument that Plaintiffs and their attorneys have engaged in bad faith conduct—either by filing this complaint or by ICD's general course of conduct—is meritless. To support this dubious claim, Defendants' Motion relies upon an almost nine-page narrative purporting to describe both this litigation and other cases between ICD and anyone represented by Defendants' counsel. This narrative includes false accusations against Plaintiffs and their attorneys, presents a misleading characterization of events, and demonstrates a reckless disregard for the truth. Because Defendants' Motion depends so heavily on this faulty narrative, Plaintiffs will first correct the record before addressing the inapposite case law Defendants rely upon in their Motion.

### A.   Defendants Make Reckless and False Accusations Against Plaintiffs And Their Attorneys To Paint Them In A Negative Light.

Defendants' narrative of events levels a hodgepodge of meritless accusations against Plaintiffs and their attorneys, the bulk of them offered without any evidence and in most instances

4

made in reckless disregard for the truth.  It appears Defendants are asserting that: (i) Plaintiffs brought this action so that Plaintiffs' attorneys could feed a story to the press; (ii) Plaintiffs filed this action as part of a vexatious litigation scheme to harm Defendants; (iii) Plaintiffs improperly filed this RICO Complaint in federal court rather than before an arbitrator; (iv) Plaintiffs filed this action so that they could publicize Defendant Beeman's criminal record and the death of an enterprise member; and (v) Plaintiffs' Complaint is frivolous.  Because Defendants' accusation that the Complaint is frivolous is part of a standalone argument for bad faith, Plaintiffs will refute that contention *infra*.  The remaining elements of Defendants' false narrative are debunked here.

     **1.**    **<u>Defendants Falsely Accused Plaintiffs Of Feeding A Story To The Press When It Is Actually Defendants Who Are Issuing Defamatory Press Releases.</u>**

Defendants allege with reckless disregard for the truth that Plaintiffs and their attorneys filed this action for the sole purpose of generating a legal news story.  That is false.  First, and most egregiously, Defendants accused Plaintiffs and their counsel of feeding a press release to a journalist as part of a scheme to use this action to harm Defendants.  (Mot. at 3, 3 n.2, 9–10).  However, neither Plaintiffs nor their counsel, nor anyone at their instruction, contacted or gave a press release to the journalist Emma Brauer or to the start-up media company that published her piece.  (Dkt. 52-1, Decl. of C. Sires ¶ 2).  Defendants lodged this grave accusation against Plaintiffs and their attorneys irrespective of the truth.  For example, Defendants make the careless—and false—contention that Plaintiffs' attorneys Boies Schiller Flexner "worked directly with Ms. Brauer" on the story simply because Ms. Brauer previously wrote about one of the firm's lawsuits.  (Mot. at 2; *id.* at 2 n. 2).  Had Defense counsel conducted any investigation before leveling their untrue attack, they would have realized that the subject of the earlier article—a $2.6 billion settlement Boies Schiller reached in an antitrust action—was widely reported on by numerous legal publications and major newspapers and, therefore, provided no credible basis for

their false accusation of a collusive relationship between Boies Schiller and Ms. Brauer. *See e.g.*,
*Blue Health Insurers Reach Tentative Antitrust Settlement for $2.7 Billion*, THE WALL STREET
JOURNAL, https://www.wsj.com/articles/blue-health-insurers-reach-tentative-antitrust-settlement-
for-2-7-billion-11600967231.

To add insult to injury, it appears that Defendants' attorneys made this allegation as a
pretext knowing that they would soon issue a formal press release with false and defamatory
statements with quotes from attorney James Gale (the signatory to this sanctions motion)*just two
days* after he filed this sanctions motion.  The day this Motion was filed, Defendants' counsel, as
attorneys to another company with close ties to the Defendants in this case, filed a lawsuit against
ICD and a non-party containing a series of false and inflammatory allegations.  ("McLaren
Compl.", Ex. A to the Decl. of C. Sires) (hereinafter, all Exhibits shall refer to the Exhibits of the
Decl. of C. Sires).  ICD contests the allegations in the *McLaren* Complaint and will zealously
defend itself in the proper forum.  But it is notable and relevant to the Court's consideration of the
instant motion that two days after Defendants' counsel filed the *McLaren* suit, their client issued
a press release trumpeting the action, including numerous quotes from Mr. Gale.  (Ex. B).  Mr.
Gale's quotes from that press release later found themselves in FLORIDA POLITICS.  (Ex. C).  On
August 23, 2021, Defendants' attorneys once again issued a press release targeting ICD with a
series of false and defamatory statements from Mr. Gale under the guise of discussing the *McLaren*
case.  (Ex. D).  To be clear, the actual factual record—not the one invented by Defendants in their
Motion—establishes that the only party engaging in sanctionable conduct here are the Defendants.

### 2. It Was Reasonable For Plaintiffs To Bring This Claim In This Court Instead Of Before An Arbitrator.

For several reasons, it was reasonable and appropriate for Plaintiffs to file this action in
federal court instead of trying to file in arbitration.  *First*, as a practical matter, at the time that

Plaintiffs filed this RICO action, Plaintiffs were uncertain as to whether Defendants would seek to compel arbitration here or, indeed, whether Defendants would consent to arbitration at all. None of the Defendants in this case were actually signatories to the arbitration agreement pursuant to which they seek to compel arbitration. (*See* "Agency Agreements at Issue in the Broward Cty. Action," Exs. E, F; "Agency Agreement at Issue in the Miami-Dade Action," Ex. G). Thus, absent their express consent or a Court order, Plaintiffs could not arbitrate this claim in the first instance.

*Second*, the fact that ICD and the defendants in the Broward County and Miami-Dade Actions engaged in lengthy disputes regarding whether those actions belonged in arbitration does not somehow prove that Plaintiffs filed this case in bad faith. (*See* Mot. at 9). Quite the opposite, as Defendants and Defense counsel here have repeatedly flip-flopped on the issue of whether these disputes belong in arbitration. In some cases, they have moved for arbitration, (*see, e.g.,* "Kratos Action Def's Mot. to Compel Arb.", Ex. H), and in others they have not. Indeed, just months before this action was filed, two of the defendants in this action filed a lawsuit against ICD rather than seek arbitration in what Defendants deem to be an action "related" to this case. (Defendants' List of "Related Civil Cases and Arbitrations," Dkt. 35-1; "Empire Compl.", Ex. I).[1] As such, it was appropriate—and certainly not sanctionable—for Plaintiffs to first file this case in federal court and then to request that it be compelled to arbitration only after learning (via their motion to dismiss) that all Defendants had consented to arbitration of the RICO claim.

---

[1] In another case that Defendants claim is "[r]elated" to this action, (Defendants' List of "Related Civil Cases and Arbitrations,", pg. 5), non-parties Legacy Insurance Solutions LLC and Bradley Tierney, both represented by counsel for Defendants here, filed a lawsuit against ICD "relating to, and arising from . . . an 'Independent Agent Agreement'" and have litigated in court without seeking arbitration. ("Legacy Compl.", Ex. J). And in another case that ICD brought against a non-party represented by Defendants' counsel, the defendant did not seek to arbitrate. *See generally* Docket Entries, *ABS Healthcare Services v. Maxim Health Inc.*, Case No. 20CV61456 (S.D. Fla.).

3.   **Plaintiffs Are Not Engaging In Vexatious Litigation; Rather They Are Defending Their Business Against Multiple Attacks By Multiple Parties In Different Jurisdictions.**

Plaintiffs also seek to correct Defendants' mischaracterization that Plaintiffs brought this action and ten allegedly related lawsuits "to ensure that the lawsuits would have the maximum economic impact on [ICD's] burgeoning competitors." (Mot. at 5).[2]  First, Defendants were not a party to *eight* of those actions, which were filed against individual former ICD agents, each of whom breached a contractual agency agreement with Plaintiffs. (Slater, Baca, Bassell, Geissler, Kelty, DeSola, Hardill, and Tierney Actions).  If, as there is good reason to suspect, Defendants somehow supported or aided those agents' contractual violations and are now paying for Defendants' preferred legal counsel, Cozen O'Connor, to represent those agents, that is an arrangement between Defendants and the agents.  Such an arrangement should not hinder Plaintiffs

---

[2] The ten actions Defendants refer to are composed of two distinct groups: (1) actions involving some of the Defendants ("Group 1 Actions"); and (2) eight actions brought against individual agents who had independent contractual relations with Plaintiff ABS and to which no Defendants are parties ("Group 2 Actions").

**Group 1 Actions:**

| | |
|---|---|
| The "Broward County Action" | "Broward Cty. Compl.", Ex. K. |
| The "Miami-Dade Action" | "Miami-Dade Compl.", Ex. L. |

**Group 2 Actions:**

| | |
|---|---|
| The "Slater Action" | Compl., *ABS Healthcare Servs., LLC v. Slater*, No. CACE-20-006865 (Fla. 17th Cir. Ct., Apr. 22, 2020) |
| The "Baca Action" | Compl., *ABS Healthcare Servs., LLC v. Baca*, No. CACE-20006874 (Fla. 17th Cir. Ct., Apr. 22, 2020) |
| The "Bassell Action" | Compl., *ABS Healthcare Servs., LLC v. Bassell*, No. CACE-20-006872 (Fla. 17th Cir. Ct., Apr. 22, 2020) |
| The "Geissler Action" | Compl., *ABS Healthcare Servs., LLC v. Geissler*, No. CACE-20006873 (Fla. 17th Cir. Ct., Apr. 22, 2020) |
| The "Kelty Action" | Compl., *ABS Healthcare Servs., LLC v. Kelty*, No. CACE-20-006868 (Fla. 17th Cir. Ct., Apr. 22, 2020) |
| The "Desola Action" | Compl., *ABS Healthcare Servs., LLC v. Desola*, No. CACE-20-006870 (Fla. 17th Cir. Ct., Apr. 22, 2020) |
| The "Hardill Action" | Compl., *ABS Healthcare Servs., LLC v. Hardill*, No. CACE-20-006863 (Fla. 17th Cir. Ct., Apr. 22, 2020) |
| The "Tierney Action" | Compl., *ABS Healthcare Servs., LLC v. Tierney*, No. CACE-20006862 (Fla. 17th Cir. Ct., Apr. 22, 2020) |

from both pursuing their rights under these individual contracts while also bringing a separate RICO action against Defendants arising from a distinct factual predicate and legal theory.

Further, Defendants are wrong that Plaintiffs "had no legitimate purpose" to bring this action because they allegedly knew it would be dismissed as improper claim splitting based on the Broward County and Miami-Dade Actions. (Mot. at 3, 17). Four of the Defendants to this Action were not parties to any of the other actions, and claim-splitting is *prima facie* inapplicable where certain claims are filed in state court or in arbitration, and a separate federal claim is filed in federal court. *Atl. Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 295 (1970) ("[T]he state and federal courts had concurrent jurisdiction in this case, and neither court was free to prevent either party from simultaneously pursuing claims in both courts."). Moreover, Plaintiffs have a strong legal basis to dispute any arguments Defendants could raise asserting privity or same nexus of facts as would be necessary to support a claim-splitting argument. *Vernon v. Ziel*, 2020 WL 4501802, at *3 (S.D. Fla. June 15, 2020) (finding that defendants failed to "demonstrate that dismissal due to claim-splitting is appropriate" and to "put forth undisputed evidence that particular claims arise out of the same 'wrongful act' or involve the same party defendants").

### 4. Defendant Beeman's Felony Conviction And The Death Of Christopher Brett Mason Are Relevant To The Complaint.

Defendants falsely assert that Plaintiffs only filed this action to publicize Defendant Beeman's multiple felony convictions and the tragic death of Defendants' former associate and enterprise member, Christopher Brett Mason. (Mot. at 9 n. 5). As discussed *infra*, Plaintiffs' claims are meritorious as they raise serious, legitimate, and well-supported allegations of racketeering activity that Plaintiffs will vigorously pursue before an arbitration panel. As is self-evident from the Complaint, Defendant Beeman's felony record and the circumstances surrounding Mr. Mason's death are relevant to Plaintiffs' claim as they relate to the racketeering

activity underlying the claim as well as the evidence Plaintiffs unearthed that establishes criminal acts committed by Defendants and their enterprise.

As alleged in the Complaint, one specific aspect of Defendants' pattern of racketeering activity was the mail and wire fraud committed against insurance regulators to conceal that Beeman, a convicted felon, is illegally in charge of several Defendant insurance entities. (Compl. ¶¶ 104, 105, 172, 190). Defendants' scheme was carefully designed both to violate Plaintiffs' contractual rights under various agreements and to evade state and federal regulations governing the insurance industry. "The State of Florida heavily regulates the insurance industry." *Gilchrist v. State Farm Mut. Auto. Ins. Co.*, 390 F.3d 1327, 1334 (11th Cir. 2004). There is a complicated web of compliance necessary to do business in insurance for good reason: to protect consumers. In Florida, convictions for certain types of felonies present a permanent bar to licensure by the Florida Division of Insurance Agent and Agency Services.

Beeman is owner and employee of Defendants Kratos Investments LLC, Prodigy Health Group LLC, and Health Team One LLC but Beeman pays his mother and best friend to use them as pawns to conceal his operation of these entities. ("The Mason Affidavit" at ¶¶ 19, 20, Ex. M; Compl. ¶¶ 4, 23, 63, 94, 101, 125, 131, 139, 183); *see also* (the "Public Records Concealing the Ownership of the Beeman Companies", Exs. N, O, P). To flout the prohibitions on his participation in this heavily regulated industry, he perpetuates an active fraud: he uses his mother and his childhood best friend, a sprinkler repair person, as a front for his insurance businesses. On state regulatory filings, Ryscik is listed as an Agent in Charge of Kratos and Health Team One LLC, but he knows little about the insurance industry, and has virtually no actual involvement in these companies. (Exs. O, P). As alleged in the Complaint, Ryscik's role is to obscure Beeman's criminal record by allowing Beeman to use Ryscik's name to do what Beeman cannot do under

his own name: sell insurance to unwitting consumers, apply for loans, and numerous other actions necessary to operate an insurance business.  (*E.g.*, Compl. ¶¶ 75–81).  This is not "legitimate competition" (Mot. at 5); it is fraud, and it hurts consumers and everyone in the insurance industry, including Plaintiffs.

Defendants also take issue with Plaintiffs' allegations concerning the tragic death of Christopher Brett Mason.  But Mason's widow's words, which Plaintiffs cite throughout the Complaint, speak for themselves. At the center of Mason's sobriety was a need to live honestly, and yet Defendants roped him into their fraud and required him to lie to everyone he loved, including his wife and his sponsors.  According to his widow, Ann Mason: "It weighed heavily on Brett . . . He was bothered by the secrecy that Corey [Shader] and Beeman required to keep the business going."  ("Mason Affidavit" at ¶ 19, Ex. M).  "I believe his relapse and inability to stay sober was based on the fact the he did not like that Corey [Shader] and Beeman had placed him in a position that he had to lie to everyone in his life." (*Id.* ¶23).[3]  Mason's widow asked Beeman, one of Mason's sponsors at one time, to help him. "He never helped."  (*Id.*).

The events surrounding Mr. Mason's death are relevant to Plaintiffs' claim as they support Plaintiffs' contention that Defendants were engaging in a criminal enterprise.  For example, Mr. Mason's untimely death led to Plaintiffs' knowledge of Defendants' criminal enterprise and the secrecy with which Defendants operated the enterprise.  (*See, e.g.,* Compl. at ¶ 110 (evidence received from Mr. Mason's phone after his death); *id.* at ¶ 124 ("Beeman threatened [Mr. Mason's] widow . . .that if she told anyone about the fact that they had been scamming ICD, that he would

---

[3] "In particular, he hated that he had to lie to two of our closest friends, Ed and Robbyn, because they knew the Cohens of ICD.  Ed was like a father to Brett and had sponsored him in recovery. From that time in summer of 2019, until he passed away in January of 2020, Brett never did get sober.  Yet, Corey and Beeman encouraged him to continue to come to work every day because they were making money off the business."  ("Mason Affidavit" at ¶ 23, Ex. M).

come after her.")).  Try as they might to deflect and cast aspersions on Plaintiffs and Plaintiffs'

counsel, the only "depravity" (Mot. at 9 n.5) relevant to this case is how Defendants treated Mr.

Mason and his grieving widow in order to hide their criminal scheme.

### 5. Defendants' Unsupported, Throwaway Accusations Should Not Be Considered.

At various points in their Motion, Defendants flippantly raise different allegations

regarding Plaintiffs' motives and conduct.  For example, Defendants allege "upon information and

belief" that Plaintiffs' principal Seth Cohen made threats and disparaging comments to

Defendants' business associates.  (Mot. at 4).  However, Defendants fail to support this assertion

(*id.*), making it impossible to address Defendants' characterization of any alleged conversations.

For that reason, the Court should disregard all of Defendants' unsupported accusations.  *BPI*

*Sports, LLC*, 2021 WL 2583493 at *5 (requiring "clear and convincing evidence" of bad faith).

As another example, Defendants claim that ICD allegedly breached an agreement to make

payments to Defendants Andrew Shader, Corey Shader, and NHS.  (Mot. at 5).  This allegation,

which is the basis for a completely separate action, has no relevance to Defendants' motion for

sanctions.[4]

### B. Plaintiffs Filed This Meritorious Complaint In Good Faith And Have Not Abused The Judicial Process.

The Court may find bad faith when it "finds that a fraud has been practiced upon it, or that

the very temple of justice has been defiled, or where a party or attorney knowingly or recklessly

raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court

order."  *Weinstock v. Storm Tight Windows, Inc.*, 2021 WL 3239460, at *6 (S.D. Fla. July 20,

2021) (internal citation omitted); *see also GE Med. Sys S.C.S. v. SYMX Healthcare Corp.*, 2021

---

[4] Indeed, the Shaders and NHS have filed an arbitration demand against ICD that parrots these same allegations.

WL 821433, at *19 (S.D. Fla. Mar. 4, 2021). In determining whether sanctions are appropriate under the bad faith standard, "the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case." *Barash v. Kates*, 585 F. Supp. 2d 1347, 1362 (S.D. Fla. 2006) (quotation omitted). Bad faith conduct can be organized into two groups: a frivolous filing that was made "knowingly or recklessly," *Purchasing Power, LLC*, 851 F.3d at 1225, and all other instances in which there is either "direct evidence of subjective bad faith" or "conduct so egregious that it could only be committed in bad faith," *Id.* at 1224–25. Defendants' Motion proceeds in scattershot fashion, but Defendants' arguments will be addressed as follows: (1) Defendants are seeking to re-litigate their motion to dismiss by arguing the Complaint is frivolous; (2) the Court is under no duty to dismiss RICO complaints; (3) this action is not comparable to cases with frivolous filings; and (4) Plaintiffs have engaged in proper litigation conduct.

1.  **Defendants' Are Not Entitled To Re-Litigate Their Motion To Dismiss.**

Under the guise of a motion for sanctions, Defendants seek to re-litigate the merits of their earlier motion to dismiss, all so they can get the dismissal with prejudice that this Court has already denied. In doing so, Defendants submit to the court a misleading and self-serving recitation of what was revealed during discovery in the Miami-Dade Action, (Mot. at 10-13 (citing Stahl Decl. *passim*)), even though such discovery is governed by a Protective Order, the case was compelled to arbitration before fact discovery had closed, and *Defendants' own obstructive conduct prevented any productive discovery from occurring*. (*See generally* "Miami-Dade Action Plaintiffs' Motion to Compel The Production of Documents," Ex. Q). For example, it is simply untrue, as Defendants assert, that Plaintiffs have "failed to identify a single trade secret" in the Miami-Dade Action. (Mot. at 11 (citing Stahl Decl., ¶ 24 ECF 52-7). Indeed, the judge overseeing the Miami-Dade Action ruled that ICD *did* adequately identify its trade secrets. *See* ("Miami-Dade Hearing

Transcript" at 25:6-8; 29:19-20, Ex. R) ("This answer sufficiently identifies what the trade secret is in this Court's opinion. . . .  This sufficiently identifies the trade secret.").[5]

Defendants cannot repackage their dismissal arguments in a motion for sanctions. *See Bocciolone v. Solowsky*, 2009 WL 10666926, at *1 (S.D. Fla. Apr. 20, 2009).  *Bocciolone* involved a civil RICO action, yet the court denied sanctions because the defendants "rel[ied] exclusively on arguments set forth in their motion to dismiss . . . which the district court ha[d] recently denied in its entirety."  *Id.; cf. Suntrust Bank v. Ruiz*, 2014 WL 5321094, at *2, *4 (S.D. Fla. Oct. 17, 2014). Moreover, Defendants asked the Court to send this case to arbitration, and that is what the Court has done. [Dkt. 34 at 1]; [Dkt. 51].  Defendants cannot now ask the Court to determine the merits of this lawsuit while the merits are being pursued in arbitration *at their invitation*.  "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (alteration adopted) (citation omitted).

## 2.    This Court Is Under No Special Obligation to Dismiss a Meritorious RICO Action.

Although civil RICO claims are commonplace, Defendants mischaracterize out-of-circuit authority to argue that there is something so special about a civil RICO action that this Court must

---

[5] As another example, the case cited by Defendants to argue that Plaintiffs previously disclosed their trade secrets in a court proceeding does not support their spurious assertion.  *Riley v. Unified Caring Ass'n*, a case in which Health Option One won summary judgment, discusses one very specific aspect of Plaintiffs' business model (sales scripts) but does not discuss in any detail Plaintiffs' overall business model, which is one of the many trade secrets Plaintiffs allege that Defendants misappropriated.  2014 WL 7335029, at *5 (D. Wyo. Dec. 19, 2014).

propel this case toward final resolution on the merits.  But that is not the law.[6]  Defendants

selectively quote a New York case to argue that it is "well-known that Plaintiffs' 'wielding RICO

almost always miss the mark.'" (Mot. at 3) (citing *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp.

3d 289, 297 (E.D.N.Y. 2017)).  But that very case goes on to say:

> The Supreme Court has also made clear that it would not interpret civil RICO
> narrowly.  In *Sedima*, the Supreme Court rejected an interpretation of civil RICO
> that would have confined its application to "mobsters and organized criminals."
> Instead, the Court held: "The fact that RICO has been applied in situations not
> expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates
> breadth." . . .  Thus, a court should not dismiss a civil RICO claim if the complaint
> adequately alleges all elements of such a claim, even if the alleged conduct is not a
> quintessential RICO activity.

*Id.* at 297–98 (internal citations and quotations omitted).

Plaintiffs are entitled to pursue this action against Defendants consistent with the Supreme

Court's recognition that Congress intended that RICO be "liberally construed to effectuate its

remedial purpose."  *United States v. Turkette*, 452 U.S. 576, 587 (1981).  "The plaintiff is master

of [the] complaint and selects the claims that will be alleged in the complaint."  *Jones v. DirecTV,

Inc.*, 381 F. App'x 895, 897 (11th Cir. 2010) (citation omitted).  Plaintiffs agree with Defendants

that RICO is not to be used "as a means of resolving routine commercial disputes."[7]  But Plaintiffs

do   not   allege   a   routine   commercial   dispute.     Instead,   the   Complaint   details   a   concerted,

---

[6] *Cf. Figueroa Ruiz v. Alegria*, 896 F.2d 645, 648 (1st Cir. 1990) (in which the Court discussed the importance of swiftly disposing of a RICO suit in the context of a plaintiff that disregarded court orders and failed to prosecute the case—"The plaintiffs' misconduct here can justifiably be considered extreme.  They filed an initial complaint which was artlessly drafted and conspicuously deficient.  They amended it once by adding a single paragraph.  They then proceeded to disappear for two months, ignoring during such time both a court order and a series of pivotal defense motions.").

[7] *Kaye v. D'Amato*, 357 F. App'x 706, 717 (7th Cir. 2009). In *Kaye*, the court found Plaintiff's RICO claim "obviously deficient," where Plaintiff had an opportunity to amend and yet presented a claim based only on two isolated events that did not demonstrate any continuity or pattern.  *Id.*

surreptitious criminal scheme that was carefully orchestrated to evade restrictions barring felons from the highly regulated insurance industry.  (*See e.g.*, Compl. ¶¶ 104, 105, 172, 190).

### 3.    Filing A Meritorious Complaint Does Not Rise to the Extreme Level Of Sanctionable Conduct.

Defendants have not alleged that Plaintiffs engaged in conduct that would give rise to the extraordinary relief of sanctions pursuant to the Court's inherent powers.  Defendants cite *Miccosukee Tribe of Indians of Florida v. Cypress* to support their argument that sanctions are appropriate.  But *Miccosukee Tribe* is inapposite; in that case the court found that the attorney knew or should have known that the allegations were patently frivolous after conducting an "investigation that led to results differing" from the suspicions he alleged in the suit.  686 Fed. Appx. 823, 827 (11th Cir. 2017).  As shown above, Plaintiffs' allegations here are not frivolous; they have a strong basis in fact and law.

Defendants also rely on *Collar v. Abalux, Inc*. to support their argument that sanctions are appropriate where a party "needlessly delays the resolution of the claims."  806 Fed. Appx. 860, 864 (11th Cir. 2020).  *Collar* is inapposite because, in that case, the delay was caused by the party's refusal to provide the court with truthful information.  *Id.*  The attorney in *Collar* submitted incorrect charts and, after opposing counsel pointed out the issue, refused to advise the court.  *Id.* The court also determined that the lawsuit was frivolous and that the attorneys had ample opportunity to correct their incorrect charts and legal argument yet refused to.  *Id.*  Plaintiffs here have not engaged in similar conduct.  To the contrary, the Plaintiffs and their counsel filed this action after conducting a thorough investigation and determined that there was a strong basis for the action under fact and law.  *Barash*, 585 F.Supp.2d 1359; *cf. Bocciolone*, 2009 WL 10666926, at *2 ("the record reflects that plaintiffs' counsel is clearly familiar with the facts underlying this

case and undertook a sufficient legal investigation in order to provide colorable causes of action at the time this lawsuit was filed.").

One of the few cases from this district cited by Defendants is an order dismissing a *Third* Amended Complaint, where the Court found Plaintiff had improperly couched a standard business dispute as a RICO claim. And yet even in that case, no sanctions were imposed, and the case was dismissed after multiple opportunities to amend. *Oceanside Lauderdale, Inc. v. Ocean 4660, LLC*, 2010 WL 2044893, at *1 (S.D. Fla. May 24, 2010). Similarly, in *Doria v. Class Action Servs., LLC*, the court concluded that sanctions were not justified, even after considering defendants' argument that the imposition of sanctions is "especially warranted" in an improper civil RICO action. 261 F.R.D. 678, 686 (S.D. Fla. 2009). Although the court found plaintiffs' claims "flimsy and poorly articulated" and found the behavior of plaintiffs' counsel "bellicose and at times unprofessional," it still concluded that sanctions were unwarranted. *Id.*[8] And in *Absolute Activist Value Master Fund Limited v. Devine*, the court concluded that allegations that the plaintiff sued and continued its suit on unviable claims in order to "harass" and "pick off information for use in a different matter" did not preclude a finding that the plaintiff "acted earnestly[.]" 826 Fed. Appx. 876, 879 (11th Cir. 2020). *Doria* and *Absolute Activist* demonstrate the high burden necessary to establish that sanctions ought to be imposed under a court's inherent powers. Defendants have made no such showing here.

---

[8] In *Doria*, court concluded that sanctions were not justified under § 1927. 261 F.R.D. at 686. But "the threshold of bad faith conduct for purposes of sanctions under the court's inherent powers is at least as high as the threshold of bad faith conduct for sanctions under § 1927." *Weinstock*, 2021 WL 3239460, at *6 (internal citation omitted). Therefore, if sanctions are improper under § 1927, they are also improper under the court's inherent powers.

### 4.    Plaintiffs Have Engaged In Good Faith Litigation.

Defendants argue that Plaintiffs had no legitimate purpose to bring this litigation and instead sought to defraud the court, abuse the judicial process, and attack Defendants for compelling ICD to arbitration in the Broward County and Miami-Dade Actions.  (Mot. at 15–17) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991); *Gov't Emps. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, 171 (E.D. Pa. 2017)).  It is difficult to keep Defendants' theory of Plaintiffs' motive straight—only pages before, Defendants alternate between proclamations that Plaintiffs brought this action to damage Defendants' reputation, feed a story to the press, and increase Defendants' litigation costs.  Regardless, Defendants have failed to demonstrate "direct evidence of subjective bad faith" or "conduct so egregious that it could only be committed in bad faith."  *Purchasing Power, LLC*, 851 F.3d at 1224–25.  As discussed *supra*, Plaintiffs had subjective good-faith reasons to bring this meritorious complaint, which they now pursue in arbitration.  Defendants' cited cases in which sanctioned parties engaged in egregious (or even negligent) conduct are inapposite.

For example, Defendants' citation to *Chambers* is misplaced.  There, the sanctioned defendants had, over the course of three years, engaged in a multitude of fraudulent and abusive tactics to deprive a plaintiff of a piece of property that was at the center of the parties' dispute. *Chambers*, 501 U.S. at 35–42.  Further, defendants engaged in the egregious conduct requiring court interference after several warnings and even losing on the merits.  *Id.* at 37–38.  Here, even if all of the allegations against Plaintiffs and their attorneys were taken as true, which they are not, they still would not rise to the egregious conduct at issue in *Chambers*.  Defendants' citation to *Nealey*, an out-of-circuit case, is also inapposite.  *Gov't Emps. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153 (E.D. Pa. 2017)).  There, the sanctioned plaintiff "improperly responded to a class action filed against it by suing the lawyers who filed the class action in [a] faraway forum."  *Id.* at 176.  In

other words, the sanctioned party engaged in *ad hominem* attacks to damage opposing counsel. Such conduct is analogous to the Motion presently before the Court, not Plaintiffs' RICO Complaint.

Further, filing a meritorious complaint does not resemble the conduct in *Purchasing Power*, which the Court determined was *not* an abuse of the judicial process. 851 F.3d at 1223. There, plaintiff's counsel failed to investigate citizenship of his parties and made a negligent misrepresentation of citizenship on its removal petition, then failed to raise the issue on an amended complaint, a preliminary status report, and even at summary judgment.  *Id.* at 1222. Unlike the counsel in *Purchasing Power*, Plaintiffs here carefully weighed the situation and chose an appropriate course of conduct.  When more information presented itself, in the form of Defendants' consent to arbitrate, Plaintiffs recalculated and immediately sought to minimize burden and expense on the parties and the Court.

### C.    Dismissal With Prejudice Is Unwarranted.

The cases cited by Defendants in which an action was dismissed with prejudice are distinguishable from here, where Plaintiffs have put forth credible, well-supported allegations supporting their claim.  In *Obukwelu v. Bd. of Trustees Fla. State Univ.*, Plaintiff's case was dismissed with prejudice as a sanction for her repeatedly lying during discovery.  837 F. App'x 686, 688 (11th Cir. 2020).  The Court "recognized the gravity and severity of a sanction of dismissal, but it expressly found that no lesser sanctions would have sufficed to properly punish" the party after warning her "of the effect of her conduct and provid[ing] her opportunities to cure[.]"  *Id.* at 688–89.  Similarly, in *Zocaras v. Castro*, dismissal was the only appropriate sanction because the Plaintiff lied repeatedly over a six-year period, including by filing more than 30 pleadings under a false name.  465 F.3d 479, 483 (11th Cir. 2006).

Defendants' cited cases involve objectively egregious conduct in which "nothing short of putting the plaintiff out of court will properly punish his serious and protracted violation[.] " *Id.* at 484. Dismissal with prejudice is "an extreme sanction, . . . justified in extreme circumstances." *Id.* at 485. There are no extreme circumstances here.

## V.  <u>CONCLUSION</u>

For the reasons set forth above, the court should deny Defendants' request to lift the stay and impose sanctions.

## VI.  <u>REQUEST FOR ORAL ARGUMENT</u>

Plaintiffs request oral argument on this Motion to simplify the issues before the Court. Oral argument should take approximately 30 minutes.

Dated:  August 26, 2021                    Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By: <u>*/s/ Carlos M. Sires*</u>
    Carlos M. Sires, Esq.
    (Fla. Bar No. 319333)
    Sigrid S. McCawley, Esq.
    (Fla. Bar No. 129305)
    401 East Las Olas Boulevard
    Suite 1200
    Fort Lauderdale, Florida 33301
    Telephone:  (954) 356-0011
    Facsimile: (954) 356-0022
    csires@bsfllp.com
    smccawley@bsfllp.com

    *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed and served upon counsel of record via CM/ECF System.

By:   /s/ *Carlos M. Sires*
Carlos M. Sires, Esq.

21