# EXHIBIT "1"

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION
CASE NO: 2020-008460 CA 44

ABS Healthcare Services, LLC and
Health Option One, LLC,

    Plaintiffs,

v.

Kratos Investments LLC, Health
Team One LLC, Complete Vital
Care LLC, Vital Care One LLC,
Health Essential Care LLC,
and Richard Ryscik,

    Defendants.
_____/

## OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO STAY OR DISMISS THIS ACTION PENDING THE RESOLUTION OF ARBITRATION, AND MOTION TO DISMISS OR TRANSFER

David Boies
(*Pro Hac Vice*)
BOIES SCHILLER FLEXNER LLP
333 Main St
Armonk, NY 10504
Telephone: 914.749.8201
Facsimile: 914.749.8300
Email: dboies@bsfllp.com

James Fox Miller
Fla. Bar No. 95070
BOIES SCHILLER FLEXNER LLP
2435 Hollywood Boulevard
Hollywood, FL 33020
Telephone: 954.924.0300
Facsimile: 914.924.0311
Email: jfmiller@bsfllp.com

Carlos M. Sires
Fla. Bar No. 319333
Sigrid S. McCawley
Fla. Bar No. 129305
BOIES SCHILLER FLEXNER LLP
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: 954.35.0011
Facsimile: 954.356.0022
Email: smccawley@bsfllp.com
Email: csires@bsfllp.com
Email: ftleserve@bsfllp.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................................................. 1

II. BACKGROUND .................................................................................................................... 2

III. ARGUMENT ......................................................................................................................... 3

    A. ICD Cannot Be Compelled to Arbitrate Under an Equitable Estoppel Doctrine ... 3

    B. Claims Against the Agents Are Not Subject to Arbitration and This Action Should Not be Stayed ................................................................................................ 7

    C. ICD's Claims Should Not Be Dismissed ................................................................ 9

        1. Florida Recognizes a Claim For Conspiracy to Breach a Contract ............ 9

        2. ICD Plainly and Clearly Alleged Its Claims Against All Defendants ...... 10

        3. The Agents Are Not Indispensable Parties ............................................... 11

    D. This Case Should Not Be Transferred to the Seventeenth Judicial Circuit in Broward County .................................................................................................... 13

        1. Convenience of Parties and Witnesses Does Not Favor Transfer ............ 13

        2. In the Interests of Justice, This Case Should Not Be Transferred ............ 15

IV. CONCLUSION .................................................................................................................... 16

Plaintiffs ABS Healthcare Services, LLC and Health Option One, LLC (collectively, "ICD" or "Plaintiffs") respond in opposition to Defendants' Motion to Compel Arbitration and Stay or Dismiss This Action Pending the Resolution of Arbitration and Motion to Dismiss or Transfer (the "Motion") as follows.

## I.     INTRODUCTION

ICD's Complaint details a scheme by which Kratos Investments LLC and its affiliates ("Defendants" or "Kratos Defendants") acted to steal its business by misappropriating its confidential information and trade secrets and using that information to improperly compete with ICD for insurance sales. (*See* Compl. at ¶ 23.) None of the Defendants have an agreement to arbitrate this dispute with ICD.

The Complaint describes how Defendants acted with others, particularly individuals and corporations affiliated with National Health Solutions, Inc. ("NHS Conspirators"). ***No arbitration agreement exists*** with respect to the NHS Conspirators, either.

Defendants seek to rely on limited and ambiguous arbitration provisions in contracts with certain Agents whom Defendants sought to induce to breach their fiduciary duties to Plaintiffs. Even if this lawsuit were against those Agents (which it is not) those Agents would not be entitled to arbitrate the claims asserted. Moreover, Defendants cannot use the existence of those contracts, which they did not sign or negotiate, and which did not involve them, to compel Defendants to arbitrate.

The Kratos Defendants have also moved to dismiss the Complaint for failure to state a claim; that motion should be denied because: (1) Florida recognizes a claim for conspiracy to breach a contract; (2) the Complaint is not a shotgun pleading; and (3) the Agents are not indispensable parties.

Finally, this case should not be transferred and consolidated with a separate Broward case filed before the instant action, *ABS Healthcare Services, LLC and Health Option One, LLC v. Andrew Shader, et al.*, Case No. CACE-20-006195 Div. 08 (the "Broward Case"). This action should remain in this Court because venue is proper, and the relevant factors—convenience of witnesses and parties, and the interests of justice—do not favor transfer.

**II.     BACKGROUND**

ICD was forced to commence this action to stop the Kratos Defendants from stealing its business. The Kratos Defendants committed serious, wrongful acts including creating sham companies in an effort to hide their conspiracy with the NHS Conspirators, illicitly soliciting ICD's customers and prospective customers and misappropriating ICD's confidential business information and trade secrets. Now, despite the complete absence of a contractual relationship with the Kratos Defendants (and despite the complete absence of any arbitration provision in the Shaders' contract with ICD), the Kratos Defendants seek to have this Court compel claims to arbitration based on ICD's contractual relationship with certain Agents with which the Kratos Defendants interacted in order to effectuate their scheme to steal ICD's business.

The problem with the Kratos Defendants' reliance on the Agent Agreements is that, even under those agreements, any arbitration is questionable because the provision itself is inherently unclear and the Agreement makes plain that claims seeking equitable remedies are not subject to arbitration. For example, the Agent Agreements on which the Kratos Defendants seek to rely provide that:

> "The Parties hereby waive their right to contest the exercise of personal jurisdiction over them in the State of Florida. The parties further agree that venue shall lie in Broward County, Florida. ICD may pursue its equitable remedies, including specific performance, injunctions and restraining orders in any court of competent jurisdiction."

2

*See* Compl. Ex. A, Agreement with Barbara Baca § XV.  In addition, the Mutual Non-Disclosure Agreement executed by the Agents provides, without reference to arbitration, that:

> "Each party acknowledges that the other party owns its Confidential Information, and that the use of the Confidential Information other than as permitted under this Agreement, would cause the other party irreparable harm for which there is no adequate remedy at law and would entitle the other party to injunctive relief as well as any other remedies available including monetary damages."

*See id.*  Mutual Non-Disclosure Agreement with Barbara Baca ¶ 7.

Simply put, the Kratos Defendants have no basis to compel arbitration as they are not parties to the Agent Agreements, particularly because the Agents themselves have no guarantee of arbitration of the claims that ICD has against them.[1]  ICD should be entitled to pursue its claims in this Court and stop the Kratos Defendants from harming ICD's business.

### III.    ARGUMENT

####         A.    ICD Cannot Be Compelled to Arbitrate Under an Equitable Estoppel Doctrine

It is black-letter law that "Arbitration ... is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit."  *Seretta Const., Inc. v. Great Am. Ins. Co.*, 869 So. 2d 676, 680 (Fla. 5th DCA 2004) (quoting *Volt Info. Scis., Inc.*, 489 U.S. at 479, 109 S. Ct. 1248); *see also Drayton v. Toyota Motor Credit Corporation*, 686 Fed. Appx. 757 (11th Cir. 2017).  ICD cannot be coerced to arbitrate its claims against Defendants for the fundamental reason that ICD has never consented to arbitration by entering into an arbitration agreement with Defendants.

There are only three limited circumstances where a non-signatory can compel arbitration in derogation of this rule: agency, third-party beneficiary relationship, and equitable estoppel.

---

[1] For example, one of the agents, Bradley Tierney, is pursuing his claims in court, realizing the claims are not subject to arbitration under the Agent Agreement.  To date, no court has compelled ICD to arbitrate its claims against the Agents.

Defendants concede the first two do not apply and so argue that ICD can be compelled to arbitrate based upon the doctrine of equitable estoppel. That argument also fails.

In order to make their equitable estoppel argument, Defendants conveniently focus on ICD's claims against the Agents, whose Agency Agreements contain the purported arbitration provisions to which Defendants seek to bind ICD. But Defendants essentially ignore that ICD asserts that Defendants conspired with numerous other parties who do *not* have arbitration agreements with ICD. As ICD alleges, Defendants worked in concert with NHS and (among others) its principals, Andrew Shader and Corey Shader, to steal ICD's business. For example, ICD alleges that Defendants conspired with NHS and the Shaders to set up sham agencies (like defendant Kratos Investments LLC) to compete against ICD and to induce the Agents to breach their contractual and fiduciary obligations to ICD. (*See, e.g.*, Compl. at ¶¶ 23, 26, 31, 40.) Yet, neither NHS nor the Shaders have arbitration agreements with ICD. *See* Exhibit 1 to Motion & Exhibit A thereto. The claims against them will thus not be arbitrated.

Defendants rely on *Physician Consortium Services, LLC v. Molina Healthcare, Inc.*, 414 Fed. Appx. 240, 242 (11th Cir. 2011) to argue that compelling ICD to arbitrate is consistent with Florida law that "a non-signatory may compel arbitration by a signatory to an arbitration agreement when each of the signatories claims against a non-signatory make [sic] reference to or presume the existence of a written agreement" to arbitrate. (Motion at p. 8. (internal quotations omitted).) However, that proposition is not applicable with respect to the claims that Defendants conspired with NHS and the Shaders for the simple reason that *those claims are not predicated on an agreement that provides for arbitration*.

Although not quoted by Defendants, the sentence in *Physician Consortium* immediately following the sentence they quote makes clear equitable estoppel does not apply if a claim is not

4

based on an agreement mandating arbitration: "In other words, if a party relies on the terms of a written agreement in asserting the party's claims, that party is equitably estopped from then seeking to avoid an arbitration clause within the agreement." 414 Fed. Appx. 242 (internal quotations omitted). There is no such agreement with NHS and the Shaders. Thus, equitable estoppel does not apply and ICD cannot be compelled to arbitrate claims which seek to address a scheme in which Defendants conspired with NHS and the Shaders to steal ICD's business.

Defendants cite *Heller v. Blue Aerospace, LLC*, 112 So. 3d 635 (Fla. 4th DCA 2013), which is inapposite. The agreement was enforced against a non-signatory because "[the signatory] inconsistently [sought] to arbitrate its claims . . . on essentially the same allegations and operative facts." *Id.* at 637. In that case, there were clear agency ties and a direct relationship to the applicable agreement. None of these ties exist in this action.

Another case upon which Defendants rely, *Marcus v. Florida Bagels, LLC*, 112 So. 3d 631 (Fla. 4th DCA 2013), does not help them because it illustrates a further reason why compelling arbitration here would be improper. There, the Court found that, since the signatories to the arbitration agreement decided to forego arbitration and elected to pursue judicial remedies, a non-signatory could not enforce arbitration under the equitable estoppel exception. *Id*. at 635 ("For these reasons, since the plaintiffs have not taken inconsistent positions—they want no part of arbitration for any aspect of their claim and BWB has elected to proceed in court—Marcus may not rely on equitable estoppel to compel arbitration."). That is precisely the case with respect to one of the Agents, Bradley Tierney (an agent Kratos financed to compete unlawfully with

Plaintiffs), who is litigating his dispute with ICD without invoking the asserted arbitration provision in his Agent Agreement.[2]

Moreover, even when they concern the Agents, the claims against Defendants are not based exclusively upon provisions of the Agent Agreements. For example, the claims for misappropriation and conspiracy to misappropriate trade secrets are brought pursuant to Florida's Uniform Trade Secret Act, Chapter 688, Florida Statutes. Those claims—which also implicate NHS and the Shaders—can be resolved without reference to the Agent Agreements. *See Premier Lab Supply, Inc. v. Chemplex Indus., Inc.*, 10 So. 3d 202, 206 (Fla. 4th DCA 2009) (noting that "the lack of a confidentiality agreement does not necessarily defeat" a trade secrets claim).

Moreover, the claims relating to the Agents include allegations that Defendants induced the Agents to breach their fiduciary duties to ICD. (Compl. at ¶¶ 26, 39, 40.) The alleged breaches of fiduciary duty are not limited to the Agents' contractual obligations, but include inducing breaches of fiduciary duty that arise independent of the contractual relationship.

Lastly, ICD's claim for tortious interference with ICD's business relationships is not predicated on the Agent Agreements but, rather, seeks redress for interference with business relationships that may not have even involved any of the Agents. In this regard, the complaint alleges that Defendants interfered with these business relationships by "inducing or otherwise causing existing and prospective customers to not do business with ICD." (Compl. at ¶ 49.)

---

[2] The other cases Defendants rely on are similarly inapposite. In each of those cases, the non-signatory's ability to compel arbitration under an equitable estoppel was predicated on an existing arbitration with the signatory. *See Lash & Goldberg LLP v. Clarke*, 88 So. 3d 426, 427 (Fla. 4th DCA 2012) (trial court had already compelled one defendant to arbitration); *Greene v. Johnson*, 276 So. 3d 527, 530 (Fla. 3d DCA 2019) (arbitration against one defendant compelled directly based on agreement). Further, *Henderson v. Idowu*, 828 So. 2d 451, 453 (Fla. 4th DCA 2002), did not address equitable estoppel at all.

6

Defendants did so by establishing front companies that they used to steal ICD's business. This claim cannot be subject to arbitration pursuant to the Agent Agreements.

In sum, Defendants have failed to show that the rule that arbitration is subject of agreement and not coercion should not be applied based on equitable estoppel.

**B.      Claims Against the Agents Are Not Subject to Arbitration and This Action Should Not be Stayed**

Because they understand that compelling ICD to arbitrate its claims would be improper, Defendants request that "If this Court denies Defendants' motion to compel arbitration," the Court should stay pending the conclusion of "the arbitration proceedings between ICD and its Agents." (Motion at p. 10.) That request is baseless.

At the threshold, there are no arbitration proceedings that exist "between ICD and its Agents." As noted, one Agent (also represented by Defendants' counsel) has affirmatively waived arbitration by suing ICD in court. And to date no court has compelled arbitration in any of the other Agent cases.

More fundamentally, Defendants proceed on the incorrect assumption that the claims against the Agents are subject to arbitration. But that assumption is wrong. The arbitration provision in the Agent's Agreement explicitly carves out claims seeking equitable remedies. "ICD may pursue its equitable remedies, including specific performance, injunctions and restraining orders in any court of competent jurisdiction." Agent Agreement, Compl. Ex. A., Section XV(A). Most of the claims in the Agent lawsuits seek equitable remedies and are thus excluded from the arbitration provision. For example, in the April 22, 2020 Complaint against Bradley Tierney, attached hereto as Exhibit A, Counts II, III, IV, and VI seek only equitable relief, including injunctive relief, disgorgement, and the imposition of a constructive trust. Because the Agents

themselves cannot compel ICD to arbitrate these claims, Defendants cannot stay this litigation pending arbitration of these claims.

To be sure, if the Agents agreed that claims for equitable remedies are not arbitrable, ICD cannot undo that agreement. "[W]here parties bargain for and/or contemplate exceptions to arbitration in their contracts, their intentions should control." *Apartment Inv. & Mgmt. Co. v. Flamingo/S. Beach 1 Condo. Ass'n, Inc.*, 84 So. 3d 1090, 1092 (Fla. 3d DCA 2012) (quoting *Rath v. Network Mktg., L.C.*, 790 So. 2d 461, 465 (Fla. 4th DCA 2001)). The Eleventh Circuit has held that, as a corollary, parties may "clearly express their intent *to exclude* categories of claims from their arbitration agreement." *Paladino v. Avnet Comp. Techs., Inc.*, 134 F.3d 1057, 1057 (11th Cir. 1998) (emphasis added).

That is precisely what ICD and the Agents did when they clearly expressed their intent *not* to arbitrate equitable claims. See *Paladino*, 134 F.3d at 1057 ("[C]ourts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties.") (quoting *Goldberg v. Bear, Stearns & Co.*, 912 F.2d 1418, 1419–20 (11th Cir. 1990); *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995) ("[T]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties."). Indeed, in *Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 692 (Fla. 3d DCA 2018), the court noted that the arbitration clause contained "an exception that provides the parties the right to seek equitable relief[.]" *See also Apartment Inv. & Mgmt. Co. v. Flamingo/S. Beach 1 Condo. Ass'n, Inc.*, 84 So. 3d 1090, 1093 (Fla. 3d DCA 2012) ("Because the parties intended to exempt equitable claims from arbitration, and the complaint only seeks equitable relief, all of the claims may be resolved by the trial court without requiring resolution by arbitration.").

8

Defendants' reference to Fla. Stat. Section 682.03(7) is inapposite. That statute provides that "If the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration." Here, Defendants seek a stay if the Court determines there is no basis to compel ICD to arbitrate, so that the statute is irrelevant. In any event, since, as explained, the claims against the Kratos Defendants are not arbitrable, the statute is also inapplicable.[3]

### C. ICD's Claims Should Not Be Dismissed

#### 1. Florida Recognizes a Claim For Conspiracy to Breach a Contract

Defendants argue that Florida does not recognize a claim for civil conspiracy to breach a contract. In support, they cite only one unpublished federal court decision, *Natural Chemistry L.P. v. Orenda Technologies, Inc.*, 2014 WL 3385046, *3 (M.D. Fla.). However, the Fourth DCA has recognized claims for civil conspiracy to breach a contract. In *Osheroff v. Rauch Weaver Millsaps & Co.*, 882 So. 2d 503, 507 (Fla. 4th DCA 2004), the court affirmed a jury verdict entering judgment on a claim for "civil conspiracy to breach the contract." And in *Mancinelli v. Davis*, 217 So. 3d 1034, 1036 (Fla. 4th DCA 2017), the court analyzed a claim for "conspiracy to commit breach of contract," and although the court determined that the plaintiff failed to plead sufficient facts to support a claim, it dismissed the claim *without prejudice* because, after amendment, depending on the facts alleged, the plaintiff "could potentially state a legally sufficient claim." *See also Del Monte Int'l, GmbH v. Ticofrut S.A.*, 16-23894-CIV, 2017 WL 4901805, at *3 (S.D. Fla.

---

[3] The case that Defendants rely on is similarly inapposite, as those claims were stayed pending arbitration of claims in the same "judicial proceeding." *See Post Tensioned Eng'g Corp. v. Fairways Plaza Associates*, 429 So. 2d 1212, 1213 (Fla. 3d DCA 1983) (stay of claims against some defendants pending resolution of claims against defendants with arbitration contracts). The Defendants also rely on *Revelex Corp. v. World Travel Holdings, Inc.*, 2007 WL 1296457, at *5 (S.D. Fla. May 1, 2007), but that case only addressed a stay in *dicta*. *See id.* ("Even if the Court were to deny NLG's motion to compel arbitration...").

9

Sept. 27, 2017) ("Plaintiff responds that a non-party to a contract may be liable for its civil conspiracy with a contract party to breach the contract. The Court agrees with Plaintiff and will not dismiss the conspiracy claims.") (citing *Osheroff*, 882 So. 2d at 507).[4]

### 2. ICD Plainly and Clearly Alleged Its Claims Against All Defendants

A complaint need only contain "a short and plain statement of the ultimate facts showing that the pleader is entitled to relief." Fla. R. Civ. P. 1.110(b). To be sure, "Each claim founded upon a separate transaction or occurrence … shall be stated in a separate count … when a separation facilitates the clear presentation of the matter set forth," *id.* 1.110(f), and ICD's does precisely that, clearly delineating five distinct counts, each brought against all defendants, each incorporating only those background allegations that are common to all counts. Complaint ¶¶ 28-67.

Defendants argue that ICD's complaint improperly "commingl[es] separate and distinct claims against defendants." It does not. Rather, it clearly alleges that *each defendant* engaged in all of conduct alleged in *each count*. This is entirely proper; there is no requirement that ICD delineate each claim against each defendant in separate counts (which would result in a 25-count complaint). "The fact that defendants are accused collectively does not render the complaint deficient. The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000); *see also Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997) ("When multiple defendants are named in a

---

[4] The case cited by the *Natural Chemistry* court, *Cabrera v. Wright*, 516 So. 2d 95 (Fla. 3d DCA 1987), was a three-sentence opinion that simply noted that a particular plaintiff had "no legal basis" for his claim of "conspiracy." In any event, to the extent there is a conflict of authority, this Court must follow the Fourth DCA cases cited above.

10

complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually.").[5]

### 3. The Agents Are Not Indispensable Parties

Defendants suggest that the complaint should be dismissed for failure to join indispensable parties, namely, the Agents who signed contracts to sell insurance for ICD and with whom Defendants conspired to steal ICD's confidential information and trade secrets and use that information to compete with ICD. The Agents are not indispensable parties to this action, which brings only *tort* claims against Defendants, who are not parties to the contracts between ICD and the Agents.

"An 'indispensable party' is a person with such an interest in the subject matter of the action that a final adjudication cannot be made without affecting his interests or without leaving the controversy in such a situation that its final resolution may be inequitable." *W.R. Cooper, Inc. v. City of Miami Beach*, 512 So. 2d 324, 326 (Fla. 3d DCA 1987). "[T]he mere fact that the absence of a party in one lawsuit may lead to multiple litigation is insufficient reason to declare a person to be an indispensable party." *Id.* Further, a joint tortfeasor or co-conspirator is ***not*** an indispensable party. *See Munn v. Horizons Dev., Inc.*, 616 So. 2d 85, 86 (Fla. 4th DCA 1993) ("We agree with appellants that the trial court erred in dismissing their tort action on the grounds that they had failed to join an indispensable party, an alleged additional tortfeasor . . . an injured

---

[5] The cases Defendants rely on are distinguishable because those cases involved "commingling separate and distinct claims against multiple defendants," *e.g.*, *Collado v. Baroukh*, 226 So. 3d 924, 927-928 (Fla. 4th DCA 2017), or commingling separate and distinct claims "in a single count," *e.g.*, *Eagletech Communications, Inc. v. Bryn Mawr Inv. Group, Inc.*, 79 So. 3d 855, 863 (Fla. 4th DCA 2012). Here, ICD clearly separated each of its claims into five distinct claims, and alleged that each and every defendant is liable for each of those claims.

11

party has the discretion to determine and sue those potential tortfeasors who may be jointly or severally liable for that party's injuries.") (citations omitted).[6]

Here, there is no reason to think that a finding of tort liability cannot be made against Defendants without affecting the interests of the Agents to such an extent that failing to join the agents would be inequitable. ICD does not seek any declaration concerning the validity of the Agent contracts or request that this Court take action that would affect the rights of the Agents under their contracts; instead, it brings only **tort claims** against Defendants. Defendants cite no case suggesting that a suit seeking tort damages, even where those tort claims implicate contracts, require joinder of parties to those contracts as indispensable parties.[7] In *Spierer v. City of N. Miami Beach*, 560 So. 2d 1198, 1199 (Fla. 3d DCA 1990), the court found that a condominium was an indispensable party to a suit between a condo resident and the City where the utility contract that the resident was challenging was between the condo and the city, and thus the resident's "objective in the litigation is to modify the condominium's rights and obligations under the contract"; here, ICD does not seek any modification of the Agents' rights and obligations under their contracts, but only seeks damages based on Defendants' tortious acts. In *Loxahatchee River Envtl. Control Dist. v. Martin County Little Club, Inc.*, 409 So. 2d 135, 136 (Fla. 4th DCA 1982), the court found ENCON, a party to the litigation, to be a necessary party to a cross claim *in the same litigation* based on a bank's failure to transfer certificates of deposits to a developer, where ENCON was the named party on the certificate of deposits, thus making ENCON an indispensable party "Under

---

[6] Indispensable parties are unlike other "necessary parties" who "do not have to be joined before a final decision may be rendered. A final decision will bind those parties joined in the suit, but will have no effect on the rights of necessary but unjoined parties." *Hertz Corp. v. Piccolo*, 453 So. 2d 12, 14 n.3 (Fla. 1984).
[7] Even to the extent that Count I for civil conspiracy to breach a contract could be viewed as analogous to a claim for breach of contract, such a breach claim still seeks only money damages and would not affect any rights or obligations of the Unfaithful Agents under their contracts.

[those] circumstances." And in *Blue Dolphin Fiberglass Pools of Florida, Inc. v. Swim Indus. Corp.*, 597 So. 2d 808, 809 (Fla. 2d DCA 1992), the court merely found that a party that was the *subject of an injunction* was an indispensable party, and thus the lower court could not enjoin that party without establishing personal jurisdiction over it.

In sum, ICD's tort claims against Defendants do not affect any of the Agents' rights or obligations, and they are not indispensable parties to this action.

### D. This Case Should Not Be Transferred to the Seventeenth Judicial Circuit in Broward County

"For the convenience of the parties or witnesses or in the interest of justice, any court of record may transfer any civil action to any other court of record in which it might have been brought." § 47.122, Fla. Stat. (2007). There are three statutory factors a court considers in determining whether to grant a motion pursuant to section 47.122: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interest of justice. *Hu v. Crockett*, 426 So. 2d 1275, 1277–78 (Fla. 1st DCA 1983). Venue is proper in Miami-Dade, and none of these factors favor transfer. This action should remain before this Court.

#### 1. Convenience of Parties and Witnesses Does Not Favor Transfer

Plaintiff is master of the Complaint and may file in any court in which venue is proper. *Safety Nat. Cas. Corp. v. Florida Mun. Ins. Tr.*, 818 So. 2d 612, 613 (Fla. 5th DCA 2002) ("A plaintiff's forum selection is presumptively correct."). This action is appropriately before the Court in Miami-Dade, and Defendant does not meet its burden to argue that transfer is appropriate. *Wynn Drywall, Inc. V. Aequicap Program Administrators, Inc.*, 953 So. 2d 28, 30 (Fla. 4th DCA 2007) (stating that it is defendant's burden to establish that transfer is appropriate from plaintiff's chosen forum); *Safety Nat. Cas. Corp.*, 818 So. 2d at 613 ("The burden is on the defendant to establish

13

before the trial court that either substantial inconvenience or undue expense requires a change for the convenience of the parties or witnesses.").

Section 47.011, Florida Statutes, the venue statute provides that actions shall be brought "in the county where the defendant resides, where the cause of action accrued, or where the property in litigation is located." Fla. Stat. § 47.011. "It is the plaintiff's option to select venue in the first instance, and when that choice is one of the three statutory alternatives, it will be honored." *McDaniel Reserve Realty Holdings, LLC v. B.S.E. Consultants, Inc.*, 39 So. 3d 504, 508 (Fla. 4th DCA 2010). A party contesting the plaintiff's chosen venue has the burden of clearly proving that the plaintiff's venue selection is improper. *Merrill Lynch, Pierce, Fenner & Smith, Inc., v. Nat'l Bank of Melbourne & Trust Co.*, 238 So. 2d 665, 667 (Fla. 4th DCA 1970). "Where venue is proper in more than one county, the choice of forum rests with a plaintiff and will not lightly be set aside." *Hall v. Animals.com, L.L.C.*, 171 So. 3d 216, 218 (Fla. 5th DCA 2015). The plaintiff's choice of venue is "meaningful" in assessing the convenience of the parties. *Darby v. Atlanta Cas. Ins. Co.*, 752 So. 2d 102, 103 (Fla. 2d DCA 2000).

Venue is proper in Miami-Dade County as several of the Defendants have headquarters in Miami-Dade. Complaint ¶¶ 4-5. *See* Fla. Stat. Section 47.011. ICD does business in Miami-Dade County and has been damaged by Kratos in that county. *See Tucker v. Fianson*, 484 So. 2d 1370, 1371 (Fla. 3d DCA 1986) (for purposes of venue, a tort claim is deemed to have accrued "where the last event necessary to make the defendant liable for the tort took place.") (quotation omitted). Therefore, venue is proper in Miami-Dade.

Defendants cite *Pep Boys v. Montilla*, which is readily distinguishable. In *Montilla*, transfer of a wrongful death action was appropriate from Broward County to Sarasota County because the vehicular accident occurred in Sarasota, and most of the witnesses were located there.

14

62 So. 3d 1162, 1165 (Fla. 4th DCA 2011). Here, there is conduct and witnesses in Broward and Miami-Dade, and those counties are *dramatically* closer in proximity than Sarasota and Broward. Given that Broward and Dade are only approximately 30 miles apart, Defendants' arguments about inconvenience ring hollow. Miami-Dade, as opposed to Broward, is not more or less convenient for the parties and witnesses. These factors are neutral and cannot be used to justify disrupting this action.

        **2.**      **In the Interests of Justice, This Case Should Not Be Transferred**

Defendants overstate the similarities between this case and the Broward Case. Here, all the Kratos Defendants are non-signatories to the Agency Agreements. The claims are: conspiracy to breach the Agent Agreements, tortious interference with Agent Agreements, tortious interference with business relationships, misappropriation of trade secrets, and conspiracy to misappropriate trade secrets. The Broward Case has different defendants, who are bound by different agreements: Andrew Shader, Corey Shader, National Health Solutions, Inc, Infinix Media LLC, Prodigy Health Group LLC, Adam Beeman, Joy Stormont, and Alliance Marketing Corporation. *See ABS Healthcare Services, LLC and Health Option One, LLC v. Andrew Shader, et al.*, Case No. CACE-20-006195 Div. 08. The claims in that action are for breach of contract, tortious interference with agent contracts, tortious interference with business relationships, misappropriation of trade secrets, violation of non-compete, and declaratory judgment. *Id.* These actions can proceed before different judges without risk of inconsistent judgments impacting the merits of each case. These are different parties and different disputes.

There is little risk of inconsistent judgments regarding the application of law because the factual disputes underpinning this case and the Broward case are different. The Agent Agreements are binding on the Agents. This Court can make determinations about the conduct of the parties in this case without impacting the merits of the cases against the Agents and vice versa.

15

In sum, Plaintiff's chosen forum should not be disturbed because venue is proper in Miami-Dade; Defendants cannot credibly argue that they are inconvenienced, and the same is true for witnesses. Finally, the interests of justice are served by this case progressing in this Court because this case differs substantially from the Broward case, and determinations in this action will not prevent adjudication of any issue in that case.

## IV. CONCLUSION

For these reasons, ICD respectfully requests that the Court deny Defendants' motion.[8]

Dated: June 2, 2020

Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By: /s/ Carlos M. Sires
Carlos M. Sires, Esq.
Fla. Bar No. 319333
Sigrid S. McCawley, Esq.
Fla. Bar No. 129305
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
Email: smccawley@bsfllp.com
Email: csires@bsfllp.com
Email: ftleserve@bsfllp.com

---

[8] To the extent this Court dismisses any of ICD's claims, ICD respectfully requests that the Court dismiss the claims without prejudice and with leave to amend to cure any deficiencies. *See Kairalla v. John D. & Catherine T. MacArthur Found.*, 534 So. 2d 774, 775 (Fla. 4th DCA 1988) ("[A] dismissal with prejudice should not be ordered without giving the plaintiff an opportunity to amend the defective pleading, unless it is apparent that the pleading cannot be amended to state a cause of action."); *Gamma Dev. Corp. v. Steinberg*, 621 So. 2d 718, 719 (Fla. 4th DCA 1993) ("Leave to amend should be liberally given and a dismissal with prejudice is not proper unless the privilege to amend has been abused, or it is clear that the pleading cannot be amended to state a cause of action."); *see also Millsaps v. Orlando Wrecker, Inc.*, 634 So. 2d 680, 681 (Fla. 5th DCA 1994) ("[A] dismissal of an action for failure to join an indispensable party should be without prejudice.").

16

James Fox Miller<br>
Fla. Bar No. 95070<br>
2435 Hollywood Boulevard<br>
Hollywood, FL 33020<br>
Telephone: (954) 924-0300<br>
Facsimile:  (954) 924-0311<br>
Email: jfmiller@bsfllp.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERIFY that on June 2, 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of the Circuit Court of Miami-Dade, Florida using the Florida Courts E-Filing Portal, and furnished via the Portal to the following counsel of record by electronic mail: Counsel for Defendant: James A. Gale, jgale@cozen.com; Samuel A. Lewis, slewis@cozen.com; David M. Stahl, dstahl@cozen.com.

*/s/ Carlos M. Sires*
Carlos M. Sires, Esq.

17