UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ABS HEALTHCARE SERVICES, LLC,                    CASE NO. 0:21-CV-60859-RKA
HEALTH OPTION ONE, LLC and
ONE STOP QUOTES, INC.

        Plaintiffs,

vs.

ANDREW SHADER, COREY SHADER,
NATIONAL HEALTH SOLUTIONS, INC.,
INFINIX MEDIA LLC, PRODIGY
HEALTH GROUP LLC, ADAM
BEEMAN, JOY STORMONT,
ALLIANCE MARKETING CORPORATION,
KRATOS INVESTMENTS LLC, HEALTH
TEAM ONE LLC, RICHARD RYSCIK,
SCOTT OFFUTT, BEEMAN'S FUTURE INC.,
CS MARKETING LLC, and C SHADER
INVESTMENTS LLC,

        Defendants.

_____/

## DEFENDANTS' STATUS UPDATE

Defendants, Prodigy Health Group LLC, Adam Beeman, Joy Stormont, Kratos Investments LLC, Health Team One LLC, Richard Ryscik, Beeman's Future Inc., and C Shader Investments LLC (collectively, "Defendants"), respectfully submit this Status Update.[1]

Unfortunately, Plaintiffs have taken liberty with the Court's order requiring the parties to **jointly file** with the Court a report regarding the status of arbitration proceedings, and transformed the joint status report into a unilateral, *ad hominem* attack on Defense counsel. Moreover, Plaintiffs' assertion that "defense counsel at Cozen O'Connor has refused to submit a joint filing" is simply not correct.

---

[1] This Status Update is only being submitted on behalf of the Defendants identified in the exordium. The other defendants in this action may present their own status updates.

Defendants' counsel requested that Plaintiffs prepare an initial draft of the joint report. The joint report that the parties filed 30 days ago consisted of a short paragraph which counsel for all parties conferred upon before it was filed with the Court as a joint report. This time, however, Plaintiffs' counsel ambushed Defense counsel at 2 p.m. the day the joint report was due with a proposed "joint statement" that consisted solely of a 6-page "Plaintiffs' Position," and the demand that three different sets of Defense Counsel add a single "Defendants' Position" by 5pm or Plaintiffs would file unilaterally. Defendants' counsel sent several emails expressing their sincere belief that the Court did not expect a "joint statement" to basically include lengthy narrative from each party, much less the sort of vituperative attack that Plaintiffs seemingly believed to be appropriate in a joint filing. Defendants' counsel also made it clear that they believed the Court expected the parties to confer on a truly joint statement that would accurately and factually update the Court on the status of the arbitration proceedings.

Contrary to Plaintiffs' representations to this Court, Defendants' Counsel advised that it was their position that the parties should be submitting a relatively short status report advising the Court as to the status of the three pending arbitrations and raising the issue for which the parties require guidance, namely, whether the Court intended the claims in this action to proceed in the previously existing arbitrations or in a separate new arbitration. Plaintiffs' counsel's response to this communication was to file Plaintiffs' unilateral statement. Attached as Exhibit "A" is a copy of the email exchange between counsel plainly showing that Defendants' counsel never "refused to submit a joint filing."

<u>**The Need for Clarification And Direction**</u>

Prior to this Court's Order [ECF No. 51], Plaintiffs were already in court-ordered arbitrations with 10 of the 15 defendants in this action. Indeed, at the time that Defendants filed

their Joint Consolidated Motion to Dismiss, Abstain, Compel Arbitration and/or Stay (the "Motion") [ECF No. 34], Plaintiffs had been ordered by the Miami-Dade Circuit Court to arbitrate the claims Plaintiffs filed against three of the Defendants—Kratos Investments, LLC, Health Team One, LLC, and Richard Ryscik (the "Kratos Defendants"), and had been ordered by the Broward Circuit Court to arbitrate the claims that it filed separately against three other Defendants—Adam Beeman, Joy Stormont, and Prodigy Health Group, LLC (the "Prodigy Defendants").  As the claims that Plaintiffs brought against the different groups of Defendants in the two state court actions arise out of the same alleged operative facts as in this action that Plaintiffs filed more than a year later and only after obtaining unfavorable rulings in the state courts, Defendants expected that Plaintiffs would simply seek to amend their demands for arbitration in one or both of the two pending arbitrations to assert their claims from this action in those arbitrations.  Instead, Plaintiffs filed a new, *third* demand for arbitration with the AAA which would require a new agreement regarding the selection of a third arbitration panel.

Defendants were not the only ones that construed this Court's Order as requiring Plaintiffs to amend their demands in the arbitrations that they instituted after being ordered to do so by the Florida state courts.  The AAA, after reviewing this Court's Order, was also unable to ascertain any agreement by the parties to commence a new arbitration with the AAA.  Defendants requested time to seek clarification from this Court, and along with all parties, have agreed to having the third, duplicative AAA proceeding held in abeyance pending further instructions from this Court.  Plaintiffs suffer no prejudice from this abeyance as they are free to seek leave to amend their demands for arbitration in either or both of the two already pending proceedings with the two groups of Defendants.  Moreover, even if a third proceeding were contemplated by this Court, in

the interests of judicial economy, this third proceeding involving the same parties and same nucleus of operative facts would likely be stayed pending resolution of the first two arbitrations.

Any interpretation of this Court's Order other than as requiring Plaintiffs to seek leave to amend their demands in the existing arbitrations ordered by the Florida state courts would be unfairly prejudicial to the Kratos Defendants. First, the Court's Order provides that Plaintiffs are required to submit their dispute to "binding arbitration as provided in the Motion". In their Motion, Defendants requested as alternative relief that the Court "require ICD to arbitrate its claims against Defendants as it was previously ordered to do." Defendants even attached ICD's Demand For Arbitration against the Kratos Defendants as an exhibit to their Motion. *See* (ECF No. 34-5). Moreover, three days after filing their Opposition to the Motion in which Plaintiffs consented to arbitration, Plaintiffs filed a Demand for Arbitration against the other Defendants with whom they had been ordered to arbitrate by the Broward Circuit Court. *See* (ECF No. 50-1). If Plaintiffs, after having had more than a month to contemplate Defendants' Motion, thought Defendants were suggesting a new arbitration with all Defendants, Plaintiffs would not have filed their second arbitration including only some of the Defendants and none of the causes of action from this action three days after consenting to arbitrate their claims in this case. The only logical explanation is that Plaintiffs are trying to multiply the proceedings and increase the costs for Defendants.

Moreover, judicial estoppel precludes Plaintiffs from submitting the Kratos Defendants to two arbitrations based on the same nucleus of facts. Notably, in the action that Plaintiffs filed against the Kratos Defendants in Miami-Dade Circuit Court, the Kratos Defendants twice sought to have the case transferred to Broward County so that it could be consolidated with the case that Plaintiffs filed against seven of the other defendants there. Each time, Plaintiffs opposed the Kratos Defendants' motions to transfer arguing that the "***the factual disputes underpinning [the***

*Miami] case and the Broward case are different*", *see* (ECF No. 64-1) at p. 15, and that "*the factual disputes underlying the two cases are different*," *see* (ECF No. 64-2) at p. 8.  Relying upon Plaintiffs' representations, the Miami-Dade Circuit Court denied both motions to transfer, and the Third District Court of Appeal affirmed one of those denials.  Having prevented transfer based on these representations, Plaintiffs changed tactics, adopted a diametrically opposed position from the one it took before the Miami-Dade Circuit Court, and now seeks to do the opposite of what it previously opposed.  Judicial estoppel prevents litigants from doing what Plaintiffs have done. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.").

As a result of the position that Plaintiffs took before the Miami-Dade Circuit Court and succeeded in maintaining, the Kratos Defendants are in a completely different position than the other defendants.  First, in the arbitration proceedings that ICD initiated against the Kratos Defendants, the parties have already reach several significant agreements.  For example, the parties have agreed that the final hearing in the arbitration with the Kratos Defendants will not occur until after a final hearing in four consolidated Agent Arbitrations.[2]  This is significant because if ICD loses its arbitrations against the individual agents, collateral estoppel will greatly narrow the issues

___
[2] After commencement of actions in the Broward and Miami-Dade Circuit Courts, ICD also commenced a series of eight (8) actions, each against an individual alleged to be a former ICD insurance agent.  The same agents are referenced by name in each of the Broward and Miami-Dade circuit courts, and the alleged breach of those agents' agreements is, in one form or another, at issue in each of the consolidated Agent Arbitrations.  Indeed, Kratos and the other parties to that arbitration cannot be liable for tortious interference if, in fact, the agents establish that there was no breach of their agreements.  Accordingly, it made logical sense for the Agent Arbitrations—which also happen to have been the first of the arbitrations commenced—to proceed to a decision first.

to be resolved, if any remain, in the arbitration with the Kratos Defendants.  Additionally, before

the Miami-Dade Circuit Court ordered ICD to arbitrate its claims against the Kratos Defendants,

the court had allowed the parties to engage in extensive discovery.  ICD and the Kratos Defendants

have agreed that the discovery that occurred prior to the entry of the order compelling arbitration

can be used in the arbitration proceedings between those parties.  Finally, the parties in the Kratos

arbitration have already agreed on the process for the selection of an arbitration panel.  Each side

has already selected an arbitrator, and, if accepted, those two arbitrators will soon select a third

arbitrator to complete the panel.  Requiring Kratos to basically "start over" from square one after

ICD succeeded in representing to the Miami-Dade Circuit Court that the factual disputes between

ICD and the Kratos Defendants were different from its disputes with the other defendants would

be unfairly prejudicial and costly.

Accordingly, the Defendants request that this Court clarify that its Order requires ICD to

seek to raise its claims in this action in the existing arbitrations, and that the Order does not

authorize ICD to file an entirely new demand for arbitration requiring ten (10) of the defendants

to defend themselves in two separate arbitration proceedings with two separate panels where the

exact same facts would be in dispute in each arbitration.

Dated:  September 24, 2021                                  Respectfully submitted,

                                                                   /s/  David M. Stahl
                                                        By:_____
                                                             James A. Gale / Fla. Bar No. 371726
                                                             E-mail:  jgale@cozen.com
                                                             Samuel A. Lewis / Fla. Bar No. 55360
                                                             E-mail:  slewis@cozen.com
                                                             David M. Stahl / Fla. Bar No. 84713
                                                             E-mail:  dstahl@cozen.com
                                                             Jonathan E. Gale / Fla Bar No. 106938
                                                             E-Mail: jegale@cozen.com
                                                             COZEN O'CONNOR
                                                             Southeast Financial Center

200 South Biscayne Blvd., Suite 3000
Miami, Florida 33131
Telephone:  305-358-5001

Stephen Miller, *Admitted Pro Hac Vice*
E-mail:  samiller@cozen.com
Peter M. Ryan, *Admitted Pro Hac Vice*
E-mail:  pryan@cozen.com
Catherine Yun, *Admitted Pro Hac Vice*
E-mail:  cyun@cozen.com
**COZEN O'CONNOR**
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone:  305-665-2130

***Counsel for Prodigy Health Group LLC, Adam Beeman, Joy Stormont, Kratos Investments LLC, Health Team One LLC, Richard Ryscik, Beeman's Future Inc., and C Shader Investments LLC***

7